## HALL *v.* ·HALL.

### DIVORCE—CRUEL AND INHUMAN TREATMENT.

A husband, who, in disregard of his wife's remonstrances, continues to keep at the family domicil other persons for whose support he is not legally or morally bound to make provision, who habitually treat her with disrespect, apply coarse and degrading epithets to her, and so conduct themselves toward her as to justify a reasonable apprehension on her part of danger to her person from their violence, while endeavoring to perform her duties, and exercising only her proper and legitimate authority in the affairs of her household, adopts such misconduct as his own, and must be held responsible for it to the same extent as if it were his own, in a suit for divorce, brought against him by his wife, on the ground of cruel and inhuman treatment and personal indignities, rendering her life burdensome.

*Bamford* v. *Bamford* followed in respect to decree affecting real property.

APPEAL from Marion.

*Bonham & Ramsey, and Rufus Mallory*, for appellant.

Contend that acts or words, to constitute cruelty, must produce bodily pain or ill-health. To a sensitive person, words may constitute legal cruelty, but to an expert in the use of billingsgate, words have no terror. ˙ (*Powelson* v. *Powelson*, 22 Cal., 359; *Johnson* v. *Johnson*, 14 Cal., 460.)

The facts do not constitute either cruelty or personal indig-
nities. If the parties are in *pari delicto*, equity will not
relieve. (*Wood* v. *Wood*, 2 Paige Ch., 111; *Mattox* v. *Mat-
tox*, 2 Ohio, 234.)

It is not alleged in the pleadings that Mr. Hall has any
property, and the prayer of the complaint does not ask for
any. (*Bamford* v. *Bamford*, 4 Oregon, 36; *Kershaw* v.
*Kershaw*, 3 Cal., 312.)

The complaint should allege the existence of common prop-
erty in divorce suits, to enable the court to make a decree
concerning the same. (*Howe* v. *Howe*, 4 Nevada, 469.)

*C. A. Sehlbrede and Tilmon Ford*, for respondent.

Submit, that to render the condition of a wife intolerable
and her life burdensome, it is not necessary that there should
be blows, or cruel and barbarous infliction of batteries that
endanger her life. There may, without that, be such indig-
nities to her person as to render her life a burden. (*Elms* v.
*Elms*, 9 Barr [Penn.], 166.)

"A husband may, by a course of humiliating insults and
annoyances, practiced in the various forms which ingenious
malice could readily devise, eventually destroy the life and
health of his wife, although such conduct may be unaccom-
panied by violence, positive or threatened." (*Butler* v. *Butler*,
1 Parsons, 329.)

As to the respondent's right to a decree for an undivided
one-third of the real estate owned by the appellant at the date
of the decree, the following authorities are cited: Civil code,
section 495; *Wetmore* v. *Wetmore*, 5 Oregon, 469; 48 Texas,
269; 9 Maine, 140; 39 Cal., 161.

By the Court, WATSON, J.:

The respondent commenced this suit in the circuit court for
Marion county, on February 3, 1881. On the 5th of the
same month, the appellant also commenced a suit for divorce
in the same court. The ground in each was "cruel and inhu-
man treatment, and personal indignities, rendering life bur-

densome." The two cases were consolidated and tried together in the court below, and the respondent had a decree in her favor. The appellant's suit was dismissed. From both decrees he has taken an appeal to this court.

The evidence is quite voluminous, but we deem it unnecessary to discuss it here at any great length. We should hesitate long before affirming the decree of divorce on the ground of direct misconduct on the part of the husband alone. He was inattentive to the wants and comforts of his wife, and in his conversation with her, and in her presence, coarse and profane. But such seem to have been his general character and habits. It does not appear from the evidence, however, that he was intentionally unkind, as a general rule, or wanting in a proper degree of affection for her.

But the appellant had one son and two daughters, by a former wife, who were grown up, and who seem to have possessed the unfavorable characteristics and offensive habits of their paternal relative, without the sentiments of affection and regard for their step-mother which he entertained, and which, though not excusing, did unquestionably mitigate the harshness of his conduct, and render it more easily to be endured.

It appears from the testimony, that apprehending difficulty if she should attempt to live with the appellant, in the same house with these children, she made it a condition of her intermarriage with him, that he should provide for them elsewhere, and to which he agreed. He did not keep his promise, and although it nowhere satisfactorily appears in the evidence that Mrs. Hall was lacking in kindness and proper regard for the comfort and welfare of her step-daughters, it does appear, plainly enough, that they not only failed to render a due measure of assistance in discharging the duties of the common household, but were habitually disobedient and disrespectful toward her, and did not hesitate, without any provocation or excuse, to apply to her insulting epithets, of a character so coarse and vulgar as would have shocked the sensibilities of a woman of ordinary refinement beyond the point of endurance.

Not only this, but the younger of the two, on one occasion, actually assaulted and beat her step-mother, under such circumstances as caused her conviction and punishment in a criminal action, for the offense. And we are satisfied, from all the evidence relating to the disposition and conduct of these daughters towards her, that she might justly apprehend a recurrence of such events, while endeavoring to discharge her proper and legitimate duties, in her husband's household.

There can be no question, we think, upon the evidence, that she left her husband's house, and sought this divorce, on account of this ill-treatment by her step-daughters, and only after she had learned from sore experience that she could not live in peace and safety under the same roof with them; and upon the actual and definite refusal of her husband to send them away, or provide for them elsewhere. All these facts were within his knowledge, and he either could not, or would not, control his daughters, or comply with his wife's request to send them away, or make other provision for them.

In our judgment, the appellant by this course, adopted the responsibility of their misconduct towards his wife, and made their cruel and humiliating treatment his own. And we think, in connection with his own defaults in the discharge of marital duties, it was sufficient to render the respondent's life burdensome, and that there is sufficient ground to believe that such was its effect. At least, we are not satisfied to disturb the decree of the court below in the matter.

The witnesses were examined orally in the presence of that court, and a better opportunity afforded it to judge correctly of their credibility than we can have, with only their written testimony before us. We are also satisfied that the custody of Walter Wade Hall, the minor child of said marriage, was properly awarded to the respondent.

The circuit court, after granting the divorce to the respondent, together with the custody of the said minor child, proceeded to enter a decree in her favor, in general terms, for the undivided one-third of all the real property then owned by

the appellant, under section 498 of the code. There was no allegation in the complaint, or in any of the pleadings, as to the existence of such property, nor any claim for such relief. Nor does the decree find that appellant owned any such property, or describe any such. The appellant claims that this was error.

That it is in conflict with the views of this court in *Bamford* v. *Bamford*, 4 Oregon, 30, there can be no doubt; but it is supported by the opinion of Judge Deady, in *Barrett* v. *Failing*, decided June 27, 1880, in the U. S. Circuit Court for Oregon. He did not decide the point, however; nor was it decided in *Wetmore* v. *Wetmore*, determined in this court subsequent to the decision in *Bamford* v. *Bamford*, *supra*, and reported in 5 Oregon, 469, which was cited as sustaining the same view.

After as thorough an examination as we have been able to give the subject, we are not satisfied that the principles enunciated in *Bamford* v. *Bamford* are incorrect, and we feel constrained to acknowledge its authority as decisive upon the question before us.

The decree, so far as it attempts to affect the real property of the appellant, is reversed, but in all else affirmed; each party to pay his or her own costs on appeal.

The decree of the court below, dismissing the suit of the appellant, is affirmed, with costs to the respondent.

Chief Justice Lord, not being satisfied of the sufficiency of the evidence to justify the decree, expresses no opinion.