## ATKINSON v. ATKINSON.

1. **Husband and Wife**: DIVORCE: DESERTION: EVIDENCE INSUFFICIENT. Action for a divorce on the ground of desertion. The circuit court granted the divorce, but upon a review of the evidence, (see opinion,) *held* that it was not sufficient to establish a willful desertion for the two years next preceding the action, and the decree is reversed and the petition dismissed.

*Appeal from Polk Circuit Court.*

FRIDAY, OCTOBER 23.

THIS is an action for divorce upon the alleged ground that the defendant willfully deserted the plaintiff, and continued to absent herself from him, without any reasonable cause for the period of two years next preceding the commencement of the suit. There was an answer denying the alleged desertion, and a cross-bill for a divorce upon account of cruel and inhuman treatment. The circuit court granted a divorce upon the petition of the plaintiff, and dismissed the cross-petition, and decreed that the plaintiff should pay to the defendant a certain sum of money as alimony. Defendant appeals.

*Wright, Cummins & Wright,* for appellant.

*Nourse & Kauffman* for appellee.

ROTHROCK, J.—I. The parties were married in the state of California in the year 1877. Before their marriage the plaintiff was a resident of the city of Des Moines, in this state, and the defendant resided with her parents in California. Soon after the marriage the parties took up their residence in the city of Des Moines. The father of the defendant presented her with a dwelling-house in which they lived part of the time, and at other times they resided with the family of the plaintiff's mother, or in rooms to themselves in her house. Two children were born to the parties, both of whom are still living. It is not claimed by the plaintiff that the defendant was guilty of any conduct which could be made the foundation of a separation or divorce until the thirtieth day of June, 1881. On that day the defendant and the plaintiff's mother had an altercation in which the defendant claims that she was inhumanly assaulted and beaten. The parties were then living in rooms in the plaintiff's mother's house. That the defendant was assaulted by plaintiff's mother on that occasion is not disputed. The mother admitted in her testimony upon the trial that she struck the defendant " across the jaw with a hair-brush." The defendant immediately took her two children and left the house, went to the house of a neighbor, and sent for her husband. From that time until the seventh of July, 1881, she and her two children remained at the house of Mrs. Durant, a neighbor and friend. On the seventh day of July, 1881, she left Des Moines with her two children, and went to her father's home in San Francisco, where she has ever since remained. This action was commenced on the third day of July, 1883, and to justify a decree of divorce on the ground of willful desertion it is necessary that the plaintiff should show that he was willfully deserted by the defendant on the third day of July, 1881, four days before the defendant's departure for California.

The evidence shows quite satisfactorily to our minds, as we read it in the abstract and amended abstract, that for some

time prior to the thirtieth of June the defendant had been contemplating a visit to California with her children. In anticipation of this visit a part of the household furniture was sold and housekeeping was discontinued, or was carried on without a full equipment of household goods. It does not appear that the defendant at any time abandoned the projected visit. On the thirtieth day of June she announced her purpose to go to California as soon as she could do so. The plaintiff objected to this and refused to stay at Mrs. Durant's house, and insisted in treating the separation as a desertion, and on the fifth day of July, 1881, before the defendant left Des Moines with her children, he sent the following telegram to the defendant's father at San Francisco: "Lizzie left my bed and board July 1st. Answer at once."

The material, and indeed the pivotal, question in the case is, did the defendant willfully desert the plaintiff when she went to the house of Mrs. Durant with the avowed purpose of going to California as soon as convenient? Or, in other words, did she then intend to separate herself permanently from the plaintiff? The evidence on this question is quite voluminous, and we cannot even give an abstract of it in this opinion. It consists of a large number of letters written by the parties to each other, and letters from the father of the defendant to the plaintiff, as well as the acts and conduct of the parties from the time of their marriage down to the time of the departure of the defendant for San Francisco on the seventh day of July, 1881. From a careful examination of all this evidence, our conclusion is that the finding should be that defendant did not contemplate a final separation until in December, 1881. When she went to California, the husband furnished her with $200 to defray the expenses of her journey. The mere fact of furnishing the money does not necessarily show that he connived at a separation, nor that defendant went away with his consent. But the $200 was not sufficient to defray the expenses of a return to Des Moines, and the plaintiff does not claim that he transmitted any money to her to enable

her to return. If he had done this, and she had refused, after a reasonable and proper time for a visit, to rejoin him at Des Moines, the finding that she intended to desert him when she went away might possibly be inferred. If it be conceded that the plaintiff objected to the defendant's making the visit, and insisted on regarding her leaving him as a desertion, as indicated by his telegram to her father, this state of facts does not necessarily prove a desertion. In these latter days wives sometimes insist on making protracted visits and absenting themselves from home for travel and recreation even without the cordial assent of their husbands, and for a reasonable degree of freedom in these respects husbands cannot well construe the acts of their wives as amounting to desertion.

We have said that a full statement of the facts disclosed in the voluminous correspondence between the parties is not practicable in this opinion. To the end, however, that the feelings of defendant towards the plaintiff may be better understood, we make the following extract from her letter to him of November 19, 1881:

"You say in your letter that you will make your little family happy, and get us a good comfortable home all to ourselves, where your relatives will not or shall not make trouble between us again. If you mean what you say, and are not doing it to deceive me, and you love your family and intend to do what is right towards us,—but if you intend to allow your folks to influence you against me and to abuse me, then tell me so, and don't fool me; but if you do as you say you will, and are not doing it to deceive me, then you may come for me or wait until our dear baby gets his teeth through, for he is liable to go into more spasms,—you know it is harder for boys to cut teeth than girls,—and send me the money to come by express,—sleeping cars. Now, write and tell me what you want to do. With a kiss from the children and me, I hope by the time you receive these few lines dear baby will

be well enough to be up and play with his dear little sister, Edna, like he used to.

"From your loving and affectionate wife.

"LIZZIE ATKINSON."

If the plaintiff wishe'd to put his wife upon the defensive and treat her absence as desertion, he should have either replied to this letter in person and offered to bring his family back to Des Moines, or he ought to have sent her sufficient money to pay the passage of the family from San Francisco to Des Moines. He did neither the one nor the other, but in his answer to this letter, dated November 28, 1881, he reminded her that when she left Des Moines she had $200, and inquired why it was necessary to send her more money. The plaintiff was abundantly able to furnish the money for the return of his family. He makes his own estimate of the value of his property by stating in his testimony that he would willingly sell all he had for $10,000, and he must have known that the $200 was exhausted in the journey to San Francisco, and necessary expenses there. It is true that it appears from all the letters of the defendant that she very much desired that the plaintiff should remove to California, or from the city of Des Moines, so as to be away from his mother's family. But when she finally consented to return to Des Moines upon the condition that they should make a home where they could live without molestation from his relatives, we do not think the conditions were unreasonable under all the facts in the case. And, indeed, this is just what the plaintiff claims he offered to do before the defendant left for California. In our opinion the court was correct in dismissing the defendant's cross-petition for divorce, and we think the plaintiff's petition should also be dismissed, and it is so ordered.

REVERSED.