ELMUS DAY, Appellant, v. MARY DAY, Appellee.

84  221
99  107

1. **Divorce:** DESERTION: CRUEL AND INHUMAN TREATMENT: EVIDENCE. The failure of a husband, having sufficient income, to provide proper medical treatment for his wife when she is ill, and permitting his children by a former marriage to treat her with disdain and contempt, and to abuse and insult her, the wife being a woman of nervous temperament, advanced in years, and of impaired health, is such cruel and inhuman treatment as will entitle the wife to a divorce upon that ground, and will justify her in leaving the home of her husband before a divorce is obtained.

2. ———: ———: AGREEMENT. Where a husband and wife agree to live apart, there is no such desertion as will constitute a ground for divorce.

3. ———: ———: UNREASONABLE CONDITIONS TO REUNION. If a husband makes the return of his wife, who has left his home without justification, conditional upon her releasing all interest in his real estate, he cannot afterwards maintain an action for divorce against her upon the ground of desertion.

4. ———: ———: PLEADING. The defendant alleged in her answer that her absence from the plaintiff's home had been with the latter's acquiescence and consent, upon the single condition that he should not be liable for her support during the time she was absent. *Held*, that the allegation did not justify the conclusion that there was a mutual agreement for separation.

5. ———: ALIMONY: ATTORNEY FEES. Where the testimony of the husband showed that he was " well-to-do," the wife was allowed one hundred and fifty dollars counsel fee, one hundred dollars temporary alimony, and twenty-five hundred dollars permanent alimony.

*Appeal from Muscatine District Court.*—HON. C. M. WATERMAN, Judge.

WEDNESDAY, JANUARY 20, 1892.

ACTION for divorce on the ground of desertion. The defendant denies the alleged desertion, and pleads that her absence from the plaintiff's house, and her living apart from him for two years past, was with the plaintiff's express consent and acquiescence, and upon the sole condition that the plaintiff should not be responsible for the defendant's support during such absence, which condition she has complied with, and avers that such consent was not withdrawn until the commencement of this cause. The defendant, in a cross bill, asks a divorce on the grounds of desertion and of cruel and inhuman treatment. The plaintiff's reply to the defendant's cross bill is substantially a denial of all its material allegations. The court below dismissed the plaintiff's petition and the defendant's cross bill, and rendered judgment against the plaintiff for costs, including an allowance for temporary alimony.

Both parties appeal. *Upon plaintiff's appeal, affirmed; upon defendant's appeal, reversed.*

*Richman & Burk*, for plaintiff.

*J. Carskadden*, for defendant.

KINNE, J.—I. The plaintiff claims a divorce on the ground of desertion. The plaintiff and the defendant were married September 28, 1882, and lived together as husband and wife at the plaintiff's house, until April 11, 1887. At the last-mentioned date the defendant left the plaintiff's house, and went to the residence of her daughter. Both parties to the marriage were elderly persons, having grown-up children by former marriages. The defendant and her child, after the marriage, took up their abode with the plaintiff on his farm. The evidence shows that the plaintiff was a farmer, and worth twenty thousand dollars or more; that after his marriage to the defendant his family consisted of from seven to ten persons; that her time was mostly occupied with housework; that help was rarely employed by the plaintiff; that the plaintiff was not inclined to trust the defendant with money; that when she advised him she was so ill as to require medical treatment, he doled out to her twenty-five cents to pay therefor; that he did not require his children to treat the defendant decently and respectfully, but permitted them to treat her with disdain and contempt, and to abuse and insult her. This course of treatment was especially pursued by the plaintiff's daughter Josephine; and one witness testifies that Josephine told her, prior to the marriage, that she would make it so hot for a step-mother that she would get out of there in a hurry. It is proper to say that Josephine denies this. That Josephine called the defendant a "liar, a d——d liar," and shook her fist in the defendant's face, and also called her a "thief," more than

*Margin note: 1. DIVORCE: desertion: cruel and inhuman treatment: evidence.*

once, is fully established. When told by his wife of the language used by his daughter towards her, he did not require his daughter to apologize for her conduct. At another time, equally without provocation, Josephine, in the hearing of others, called the defendant "a d——d liar." At still another time Josephine used this language to the defendant: "What in hell and damnation have you and pa been sneaking around in my room for?" It is manifest that the plaintiff knew of the course of treatment of his children towards his wife. Much of it is shown by the testimony to have been actually brought to his knowledge. There is no claim that the plaintiff advised his children to commit the acts complained of, nor is it necessary that he should have done so. Whatever course of conduct was by his children pursued towards his wife with his knowledge, he must be held accountable for as having assented thereto. Nor can he protect himself from the legal results which may follow such cruel and inhuman treatment as will justify a divorce to the wife on the ground that his children were the wrongdoers, and that he ought not be compelled to send them away from their home. The law requires a husband to do all that he reasonably can to protect his wife from insult and abuse, regardless of the source from which it may come. If, as seems to be the case here, he could not or would not control the conduct of his children to the extent of securing to the wife decent treatment at their hands, then he is, if possessed of ample means, bound to provide a home where she can be free from their insult and abuse. *Atkinson v. Atkinson*, 67 Iowa, 364. Failing to do so, she is, in a proper case, justified in leaving him, and such leaving will not constitute legal desertion. The evidence satisfactorily shows that the plaintiff was completely under the dominion of his children, especially his daughter Josephine; that she ruled the household; that she, with his knowledge, usurped the place of the wife; that

he did not even attempt to correct the abusive conduct of this thirty year old daughter, but virtually assented to a course of conduct on her part towards his wife not only often insulting and abusive, but constantly humiliating and unendurable to the defendant, who was a woman of nervous temperament, advanced in years, and apparently of impaired health. Was the treatment accorded the defendant such as justified her in leaving the plaintiff? Was it such as would give her good grounds for a divorce? To our minds both questions must be answered in the affirmative.

This court has often defined legal cruelty which would entitle a party to a divorce. It is said in *Beebe v. Beebe*, 10 Iowa, 133, if "austerity of temper, petulance of manner, rudeness of language, a want of civil attention, occasional sallies of passion do threaten bodily harm, they amount to legal cruelty." And in *Wheeler v. Wheeler*, 53 Iowa, 515, it is said: "Any course of conduct, therefore, which would have the effect to impair health, would be legal cruelty." Again: "If the treatment of the plaintiff by the defendant, considered as an entirety, is of a nature to affect her mind, undermine her health, and thereby endanger her life, it is sufficient to entitle her to the relief she demanded." *Doolittle v. Doolittle*, 78 Iowa, 694, and cases cited. It does not appear that the wife ever gave any cause for, or in any manner provoked, the treatment she received; indeed, the plaintiff's only complaint against the defendant was her great love for her children. We cannot doubt that the treatment suffered by the defendant not only became unendurable to her, but it had a direct tendency to impair her health, and did impair it, and endangered her life. The testimony shows that when she left the plaintiff's house she was broken in health, and was sick for some time at her daughter's, where she received medical care and treatment.

VOL. 84—15

II. Defendant contends that the plaintiff is not entitled to a decree of divorce, because the absence of

**2. —: —: agreement.**

the defendant from his home was with his acquiescence and consent. If the plaintiff consented to the defendant's living apart from him, there was no desertion in the legal sense. It is sufficient to observe that the evidence as to this point is conflicting, and fails to establish the defendant's claim.

III. If it should be conceded that the defendant was not justified in leaving the plaintiff's house by

**3. —: —: unreasonable conditions to reunion.**

reason of the conduct heretofore referred to, it would certainly be her duty to return to his family. It seems that, a day or two after she left, the plaintiff went to see her, and tried to induce her to return; and the record discloses the fact that he sought to make her return conditional on her in some manner releasing all claim to any interest in his real estate. This she declined to do. If the plaintiff thought the defendant was at fault, and wished to offer an opportunity to return to him, his offer should not only be made in good faith, but it should not be coupled with improper conditions; and certainly a condition requiring her to part with a possible interest in his estate was unreasonable, and she was not at fault for not entertaining the same. Schouler, Husband and Wife, sec. 522. That such was his proposition the testimony clearly shows. The price which the plaintiff exacted for the defendant's return shows his offer was not made in good faith. Whether she could have legally parted with her dower right we need not determine. The exaction was one the plaintiff had no right to make, and he could not, we think, claim thereafter that she had deserted him, even though she was guilty of desertion in leaving him in the first instance.

IV. The defendant's answer contains the following allegation: "And, further answering, the defendant

4. ——: ——: says that her absence from the plaintiff's
pleading. home, and her living apart from him for
the past two years, has been with the acquiescence and
express consent of the plaintiff upon the single condi-
tion that he should not be responsible for her support
during the time that she should be so absent from his
house, which condition she has strictly complied with."
If the separation was by mutual agreement, there
could have been no willful desertion, and hence no
divorce on that ground. The district court treated the
above allegation as averring that the separation was by
agreement of the parties. All the allegation amounts
to is an averment that, so far as the plaintiff was
concerned, she lived apart from him with his consent.
We do not think it will justify the conclusion that there
was a mutual agreement for separation. It simply
charges a willingness on his part for her to live apart
from him if he was not called upon to support her.
This view is also in harmony with the testimony of all
the parties. Even if she had lived apart from him,
and accepted support from him, she would not thereby
consent to the separation. Stewart on Marriage and
Divorce, sec. 256.

V. From what has been said it follows that the
defendant is entitled to a divorce. The defendant
complains of many acts which we have not mentioned,
and to which we do. not think she was justified in
attaching any importance, and as to many of which the
evidence is conflicting. In legal contemplation the
plaintiff deserted the defendant, and the evidence fully
justifies us in our conclusion that she was cruelly and
inhumanly treated.

VI. Complaint is made of the action of the court
below in allowing one hundred and fifty dollars counsel
fees and one hundred dollars temporary ali-
5. ——: mony, and our attention is called to the fact
alimony:
attorney fees, that an allowance for temporary alimony

has also been made in this court.    The plaintiff claims that the defendant did not show such a state of facts as would entitle her to a divorce, but holding as we do to the contrary the allowances were proper.    We are asked to allow a sum as permanent alimony.    The plaintiff's own statement of his property shows he is well to do, and she will be allowed twenty-five hundred dollars as permanent alimony.

. , The judgment of the district court will be affirmed on the plaintiff's appeal, and, on the defendant's appeal, REVERSED.