JOSEPH EDGAR EDWARDS

*v.*

ELIZABETH J. W. EDWARDS.

[Decided July 3d, 1905.]

1. Defendant, upon leaving her husband, left a letter to him disclosing that her leaving was caused by difficulties between her and petitioner's mother and the subsequent conduct of petitioner. The letter gave him permission to come and see her, and was expressed affectionately.—*Held,* that it was the husband's duty, under those circumstances, to seek his wife and urge a reconciliation, and that the proof did not establish a willful desertion at the time she left.

2. A subsequent letter from defendant to petitioner declared that she intended never to live with him again. This would be proof of willful desertion, but will not support a decree, as the statutory period had not elapsed since the date of the letter when this petition was filed.

3. The evidence *held* not to show that petitioner had performed his duty in respect to a reconciliation.

On petition for divorce.

*Mr. William D. Wolfskeil,* for the petitioner.

MAGIE, CHANCELLOR.

The master to whom this undefended divorce case was referred has reported that the proofs before him establish a willful desertion of petitioner by defendant on July 29th, 1901.

I am unable to discover sufficient evidence to support that conclusion.

On July 29th, 1901, the defendant left the house in which she and her husband had been living and thereafter did not return. When she left her husband was absent. In his testimony he admits that his wife and he had a quarrel on the night preceding that day, but he claims that they had been reconciled. If the wife's conduct in leaving indicates an intent to desert, the case of the petitioner will be made out.

Her intent at the time is indicated in two modes—*first,* by the testimony of a neighbor, who came to her house while she was preparing to leave, and to whom she stated that she was intending to leave, and *second,* by a letter which defendant sat down and wrote to her husband in the presence of the neighbor. This letter is more persuasive evidence than that elicited from the person present. I find it impossible to read it and resist the conviction that its writer did not intend to break up her home and life by removing from her husband's house. In it she declares that her husband loves his mother better than he loves her, and plainly indicates that there had been a serious quarrel between them, evidently respecting some difficulty with his mother. She says: "I do not like black looks as I have been getting, and you would not do it if you did not want me to go." And a fair inference is that in this, and perhaps in previous quarrels, his conduct was such that she assumed that he desired her to leave him. At all events, after signing herself thus: "I am as very [ever] your true and loving wife," she adds: "Now, Ed., go and have a good time, as I will stay at home—but if you want to see me you can."

From the tone of this letter, I think it clear, under the doctrine of our cases, that it was the duty of the husband to seek and urge a reconciliation with his wife, who thus left him holding out a hope that if he came to see her, matters might be mended. Petitioner did not perform this duty, but on the 2d of August published in the local newspaper a notice that his wife had left him and forbidding anyone to trust her on his account.

On the 3d of August defendant procured the insertion, in the same newspaper, below the notice of her husband, of a paragraph stating that she had just cause for leaving him, and "if he wants the world to know the reason, I will publish it if needed."

The petitioner produces no evidence of any immediate or early attempt at reconciliation. He states in his deposition that he sent friends to her, but he does not disclose the names of the friends or produce them as witnesses. That evidence is wholly unavailing to establish his performance of his duty.

On the 21st of September, 1901, petitioner received a letter from a lawyer threatening him with proceedings if he continued to "slur" his wife.

Thereafter the petitioner did nothing to procure a reconciliation with his wife until a period within a year prior to the filing of his petition. He then called upon the mother of the defendant, taking with him a friend, and demanding from the mother an interview with his wife or a reply to his request that she would live with him. This call was repeated, but during that period the defendant was away from home, engaged in the occupation of a nurse. Thereafter a letter, without date, the envelope of which is postmarked November 29th, 1904, was received from defendant, in which she wrote him that she had heard that he was inquiring for her and wanted to have a talk with her in regard to living together again. She excused herself for not meeting him on account of her being compelled by her work as a nurse to leave her mother's house, where she had been making a visit and had learned of his wish. She then added: "If you should care to write, direct to mama, she will forward it to me and I will answer when I write her my address."

Petitioner did not avail himself of this opportunity held out by the wife. What further he did he does not disclose, but he produces a letter, without date, the envelope of which is postmarked January 19th, 1905, in which his wife stated that she had heard that he wished a decided answer whether she would live with him or not, and she adds: "I never intend to live with you again."

This letter is proof of a desertion that is willful, but I fail to find that, prior to that letter, a reconciliation might not have been effected if the husband had done his duty in seeking it. But this leaves the petitioner unsuccessful, because the desertion thus proved has not continued for the statutory period.

The result is that the report cannot be confirmed and the petition must be dismissed.