# Spafford *v.* Spafford.

### Petition for Alimony.

### (Decided February 15, 1917.   74 South. 354.)

1. **Husband and Wife; Separate Maintenance; Jurisdiction of Courts; Equity.**—Courts of equity exercise original jurisdiction to award alimony by way of separate maintenance independently of a bill for divorce.

2. **Husband and Wife; Separate Maintenance; Right of Wife; Cause for Divorce.**—It is not absolutely essential for the support of a bill for alimony by way of separate maintenance that the facts alleged are sufficient to warrant a divorce.

3. **Husband and Wife; Personal Rights; Selection of Domicile.**—The universally recognized right of the husband to select his own domicile must be reasonably and not arbitrarily exercised; the question in each case to be determined on the peculiar facts and circumstances there existing.

4. **Husband and Wife; Separate Maintenance; Right of Wife; Husband's Choice of Domicile.**—A bill which alleged that the husband took his wife, contrary to his antenuptial promise, to reside in the home with his mother and sister, where she was given no authority as mistress of the home, and where she was insulted, humiliated, and made to feel that she was not welcome by the mother and sister, and that the husband, in refusing the wife's request that in view of the delicate state of her health he remove her from her unpleasant surroundings, stated that he held his duty to his mother and sister to be above all else, and declared he would not support her if she refused to reside there with him, is sufficient to entitle the wife to separate maintenance.

5. **Husband and Wife; Separate Maintenance; Pleadings; Construction.**—A suit for separate maintenance is one in which the public occupies in effect the position of a third party, and mere legal niceties in regard to pleading should not interfere with the meritorious consideration of the cause, though the rights of the parties must be fully respected, and the bill must contain sufficient averment of facts to give the respondent due notice of what he is called upon to defend.

6. **Equity; Conclusions; Collective Facts.**—A bill for separate maintenance, which alleged that the husband took his wife to live with his mother

[Spafford v. Spafford.]

and sister, who insulted, mistreated, and humiliated the wife and made her feel that she was not welcome, is not defective as alleging conclusions of the pleader, since the facts amounting to such treatment could hardly be specifically alleged, and the allegations may be classed as those stating a collective fact.

(McClellan, J., dissenting.)

APPEAL from Mobile Chancery Court.

Heard before Hon. THOMAS H. SMITH.

Bill by Bernadine Spafford against Ralph B. Spafford for alimony without divorce. From a decree overruling demurrers to the bill, defendant appeals. Affirmed.

Bill by the wife, appellee here, against the husband for alimony alone. The bill shows both parties to be over the age of 21 and residents of the city of Mobile, Ala., and their marriage on October 28, 1915. The bill further shows that prior to their marriage, respondent promised complainant that he would take her into a home owned by him which would not be occupied by other members of his family, and where she could keep house and be the mistress of her own home; that instead of carrying out his promise he took her into a home in Mobile which was occupied by his mother and sister, the latter being a widow with two children who resided with her; that after entering said home the wife was insulted, mistreated, and humiliated by the said mother and sister, and was made to feel that she was not welcome—that she was eating food to which she was not welcome; that respondent's sister was the head of his home, and complainant had no authority and no rights therein, except with reference to the one room actually occupied by her; that when she hung some of her pictures in the parlor of the home the mother and sister refused to permit them to remain in the parlor, and carried them back to the room occupied by complainant; that in such and in many other ways, by the adoption of similar methods of treatment, the mother and sister of respondent made complainant very miserable and kept her unhappy, and she appealed to respondent to remove her from these unpleasant surroundings, urging him to take her to his other home, as he had promised, or go with her to her own mother's home in the city of Mobile, and there board until different arrangements might be made; that instead of being moved by the appeals thus made to him by her, respondent assumed a lofty and haughty attitude, and informed her that he held duty to his mother and sister to be above all else; that he

would not go with her to her mother's home, and would not move her out of the home then occupied by his mother and sister, nor support her if she refused to reside in said home. The bill further alleges that complainant is soon to become a mother, and is in such physical condition that she is very nervous, and it is impossible for her to continue in the said home and suffer said indignities; that although respondent is aware of her said condition he still refuses to do anything for her, or to contribute in any manner to her support, unless she remove back into said home; and that respondent knows complainant has absolutely no property, and that she even now finds it necessary to work for her support and will soon be unable to work at all until after her approaching travail.

The demurrers to the bill take the point that the bill is without equity, and shows upon its face that the respondent is willing to support complainant if she will live in his home, and that it shows upon its face that she voluntarily removed from his home without legal cause. There are also grounds of demurrer taking the point that certain allegations in the bill—such as that oratrix was insulted, mistreated, and humiliated by the mother and sister of respondent, and made to feel that she was unwelcome in the home—are but mere conclusions of the pleader and not the allegation of any fact.

The chancellor overruled the demurrers, and appellant prosecutes this appeal.

INGE & McLEOD for appellant. WEBB, McALPINE & GROVE for appellee.

GARDNER, J.—(1) This is a bill by the wife for separate maintenance. That courts of equity exercise in this state original jurisdiction to award alimony independently of a bill for divorce was established in the early history of this court, and is of course not questioned on this appeal.—*Clisby v. Clisby*, 160 Ala. 572, 49 South. 445, 135 Am. St. Rep. 110.

(2) There has existed some diversity of opinion as to whether or not the wife to sustain such a suit must necessarily establish facts sufficient to warrant a divorce. Such a view seems to be entertained by Mr. Bishop in his work on Marriage and Divorce (1 Bish. Mar. and Div. § 796). The author recognizes the rule in Alabama to be to the contrary, however.—Section 797, note.

[Spafford v. Spafford.]

And in 1 Rul. Cas. Law, § 85, p. 937, we find the following: "Although some cases require that she establish grounds such as would entitle her to a decree of judicial separation or divorce, the preferable view appears to be that facts sufficient to show a persistent, unjustifiable course of conduct on the part of the husband rendering the wife's life miserable. Thus, where she has been unjustifiably abandoned she is entitled to alimony, even though it is not of sufficient duration to entitle her to a divorce."

This principle found application in the recent case of *Cook v. Cook*, 196 Ala. 180, 71 South. 986, where the separation was of only a few months' duration. It is therefore not absolutely essential for the support of a bill of this character that facts be alleged sufficient to warrant a divorce.

The question pleaded as of prime importance by counsel for appellant on this appeal relates to the equity of the bill, it being insisted that the facts set up in the bill of complaint disclosed that the husband was willing to support the wife in the home also occupied by his mother and sister, and that notwithstanding the alleged conduct of the two latter toward the wife, he owed her no further duty than to support her under that particular roof, and that her quitting it was therefore without legal excuse. It is urged as a settled rule that the husband is the head of the family, and as such has the right to select his own domicile.

(3) This general rule, so far as we have been able to discover, is universally recognized. It was given recognition by this court in the recent case of *Winkles v. Powell*, 173 Ala. 46, 55 South. 536. It is also conceded by equal weight of authority that the rule has its limitations. In *Winkles v. Powell, supra,* it was held that while the husband ordinarily has the power to select the domicile, yet this right must be reasonably and not arbitrarily exercised. No general rule can be laid down as a safe guide, but each case must be determined upon its own peculiar facts and circumstances. In the note to *Brewer v. Brewer*, 13 L. R. A. (N. S.) 222, the author thus expressed the rule: "In considering questions of this nature, the courts confine themselves more to the determination of what is reasonable under the facts of each case than to the discussion of precedents. But it is commonly laid down as a general proposition that the power of determining where the marital domicile shall be located, or who shall be the inmates thereof, rests primarily in the husband in correlation to his duty to make provision for the wife. It is uni-

versally conceded, however, that this right must be reasonably exercised."

The *Brewer Case* bears a striking analogy to the one here under consideration, and we quote the following from the opinion: "The husband has the right to direct the affairs of his own house, and to determine the place of the abode of the family; and it is general the duty of the wife to submit to such determination. The right which the husband exercises in these matters is not, however, an entirely arbitrary power. He must have due regard for the welfare, comfort, and peace of mind of his wife.— *Dakin v. Dakin*, 1 Neb. (Uunof.) 457, 95 N. W. 781. The cases cited by the appellant establish the doctrine that a husband may not require his wife, against her will, to reside in the family of his mother, especially in a subordinate capacity.—*Powell v. Powell*, 29 Vt. 149; *Shinn v. Shinn*, 51 N. J. Eq. 78, 24 Atl. 1022. Every wife is entitled to a home corresponding with the circumstances and condition of her husband, over which she shall be permitted to preside as the mistress. The defendant in this case has shown a strong sense of filial duty. This is commendable, but it must not conflict with the conjugal duty he owes to his wife. The family is the unit of the social organism, and, while the institution of new families to some extent involves the disintegration of the older household, it is absolutely necessary to continued social existence. When a man marries and founds a new family, he assumes new duties and obligations; and, when these conflict with his former ties, they must be held paramount. The very existence of the family depends upon the enforcement of this principle."—13 L. R. A .(N. S.) 226.

We do not express approval of all that was said in the above quotation, but only as to the general principle set forth. That it is correct in principle we think is supported by other authorities, as well as by common sense. This was recognized by the New Jersey Chancery Court in *Wright v. Wright,* 43 Atl. 447, by the Supreme Court of Massachusetts in *Franklin v. Franklin,* 190 Mass. 349, 77 N. E. 48, 4 L. R. A. (N. S. 145, 5 Ann. Cas. 851, and by the Court of Appeals of Illinois in *Albee v. Albee,* 43 Ill. App. 370, affirmed by the Illinois Supreme Court, 141 Ill. 550, 31 N. E. 153. The case of *Powell v. Powell,* 29 Vt. 148, has been frequently cited, with both approval and disapproval. It is disapproved in 1 Bish. Mar. and Div. § 789, and in Nelson's Divorce and Separation, vol. 1, § 68. In the Vermont case the

[Spafford v. Spafford.]

wife refused to go to the husband "to live with him near his relatives." After discussing the disquietude occasioned in the mind of the wife by close proximity to the husband's relatives and reaching the conclusion that her absence under such circumstances was not a willful desertion, the court said: "While we recognize fully the right of the husband to direct the affairs of his own house, and to determine the place of the abode of the family, and that it is in general the duty of the wife to submit to such determinations, it is still not an entirely arbitrary power which the husband exercises in these matters. He must exercise reason and discretion in regard to them. If there is any ground to conjecture that the husband requires the wife to reside where her health or her comfort will be jeopardized, or even where she seriously believes such results will follow which will almost of necessity produce the effect, and it is only upon that ground that she separates from him, the court cannot regard her desertion as continued from mere willfulness. Any man who has proper tenderness and affection for his wife would certainly not require her to reside near his relatives if her peace of mind were thereby seriously disturbed. This would be very far from compliance with the Scriptural exposition of the duty of husbands: 'For this cause shall a man leave father and mother and cleave to his wife, and they twain shall be one flesh.'"

We quote from this case because of the fact that it has excited general interest and found frequent reference in subsequent decisions, but we do not mean thus to indicate approval thereof. Indeed, we are inclined to the view that the principle there sought to be applied is too far extended. But of course no general rule would cover all cases. As was said by the Kentucky Court of Appeals in *Klein v. Klein*, 96 S. W. 848: "It may be conceded that it is the duty of a husband to provide a comfortable home for his wife, and to surround her with agreeable associations, and to do everything within reasonable and proper limits that can be done to make her happy. The provision that the husband should make for his wife in respect to home, companions, and surroundings necessarily depends upon a variety of circumstances involving the social standing, pecuniary condition, employment or business of the husband, and his place of residence, that no rule of general application can be laid down. Each case must be adjudged on the facts upon which it rests; what would be reasonable and proper in one might be wholly unsuitable and

inadequate in another, and it is also true that, within reasonable bounds, he has the right to determine the place where he will live, and it is the duty of the wife to accept such residence and such place as the husband may, without unwarranted parsimony or stubbornness, select."

The following observations pertinent to the question here under consideration, quoted by the Supreme Court of West Virginia in Hall v. Hall, 69 W. Va. 175, 71 S. E. 103, 34 L. R. A. (N. S.) 758, commend themselves to the thoughtful mind. in cases of this character: "In assuming the marriage relation, it is understood that the contracting parties do so fully aware of the frailties and imperfections of human nature, and conscious of the fact that mutual forbearance must be practiced to enable them to pursue pleasantly the journey of life as companions; each party undertaking to overlook moral wrongs and infirmities in the other. The best interests of society, decency, and morality combine in demanding that the obligations taken upon themselves, by the parties who enter into the marriage contract, should not be abandoned and disregarded upon the mere whim or caprice of either party, or upon slight cause, real or imaginary."

The duty of the husband to seek reconciliation in cases of this character is fully discussed in the note to Hill v. Hill, 36 L. R. A. (N. S.) 1117. See, also, Edwards v. Edwards, 69 N. J. Eq. 522, 61 Atl. 531.

It is insisted that the bill of complaint shows no misconduct on the part of the husband himself, but only on the part of his mother and sister. As bearing particularly upon this phase of the subject attention is directed to the case of Hall v. Hall, 9 Or. 452, in which case the husband's children were disobedient and insulting to their stepmother, and one of them was convicted in the courts for assaulting her. The wife left the husband, insisting that she could not live in peace with his children, and he refused to provide for them elsewhere. No misconduct was charged on the part of the husband. After reviewing the evidence the court said: "All these facts were within his knowledge, and he either could not, or would not, control his daughters, or comply with his wife's request to send them away, or make other provision for them. In our judgment, the appellant, by this course, adopted the responsibility of their misconduct towards his wife, and made their cruel and humiliating treatment

his own. And we think, in connection with his own defaults in the discharge of marital duties, it was sufficient to render the respondent's life burdensome, and that there is sufficient ground to believe that such was its effect. At least, we are not satisfied to disturb the decree of the court below in the matter."

(4) In the case here under consideration the husband (according to the averments of the bill) carried his wife, contrary to his antenuptial promise, to reside in the home with his mother and sister, where it is alleged she was insulted, humiliated, and made to feel that she was not welcome, and was without any rights or authority. The wife, being in a delicate state of health and approaching travail, appealed to the respondent to remove her from her unpleasant surroundings, and in refusing her request he haughtily informed her that he held duty to his mother and sister to be above all else, and declared he would not support her if she refused to reside there with him.

As was remarked in the *Brewer Case, supra,* and applicable here, the respondent discloses a strong sense of filial duty, which is of course highly commendable, but which must not conflict with the conjugal duty which he owes his wife. He has assumed new duties and obligations, and when they conflict with his former ties the conjugal duties must be held paramount, which principle is in keeping with the Biblical injunction that the husband shall forsake father and mother and cleave to his wife.

The averments of this bill disclose the unhappiness of the wife produced by mistreatment on the part of the mother and sister of her husband. His conjugal duty seems to have been lost sight of in that which he conceives he owes his mother and sister. The wife received no sympathy or encouragement from her husband, and no support in her effort to reconstruct and adjust their household affairs.

The cases herein cited fully support the equity of this bill, and numerous cases in point are found collected in the notes to these authorities. The same principle was recognized by this court in the case of *Brown v. Brown,* 178 Ala. 121, 59 South. 48, where the wife left her husband after living for a short time in the home with his parents. The husband sought a divorce on the grounds of abandonment, and relief was denied him on the ground that the wife had not voluntarily abandoned the husband.

We have made no attempt to declare any general principles or rules, for the reason that we recognize that questions of this character present the fundamentals of society and are of the most delicate nature with which courts have to deal, and each case must rest upon its own peculiar facts and circumstances.

(5) There are assignments of error taking the point that the averments of humiliation to complaint and her unwelcomeness in the home were but conclusions of the pleader, and not the allegation of any fact. Suits of this nature are regarded as of a tripartite character, wherein the public occupies in effect the position of a third party, and the court is bound to act for the public in such cases, though of course the rights of the parties themselves must be fully respected.—*Wilkinson v. Wilkinson,* 133 Ala. 381, 32 South. 124; *Powell v. Powell,* 80 Ala. 595, 1 South. 549. We apprehend, therefore, that in cases of this character questions of mere legal niceties in regard to pleading should not interfere with the meritorious consideration of the cause. The bill should of course contain sufficient averments of facts on which the suit is founded to give due notice to respondent of what he is called upon to defend.

(6) The complainant here founds her rights upon a continued misconduct on the part of respondent's mother and sister covering a period of several months and embracing such conduct as would make her feel an unwelcome guest in the home, an intruder, with no rights to exercise or privileges to enjoy. She relies upon no blow, either threatened or apprehended. The conduct on which complainant does rely may be produced not only by word of mouth in insulting language, or by denial of the rights to which she is entitled, but by the silent shrug of the shoulder, the sneer or disdainful look, and by a haughty and unsympathetic attitude. In such a situation it is difficult to allege the facts other than in general terms, and the averments of the complainant in this case may be classed with those cases embracing the doctrine of a statement of a collective fact. This form of pleading is recognized as proper in cases of this character in 1 Nelson on Divorce and Separation, § 336, wherein is found the following: "It is difficult to allege a course of ill conduct without using comprehensive terms which are apparently open to objection as being indefinite and uncertain. The rule in such cases is that where the fact is of such a nature that specific statement of it cannot be made with a reasonable number of words, a

general allegation specifying the nature of the acts is sufficient."

No one can read the bill in this case without being convinced that the averments therein fully informed the respondent of what he is called upon to defend, and a more particular form of pleading would seem to call for a detailed statement as to particular parts of the evidence which it is entirely unnecessary to embrace in a bill of this character. We therefore conclude that the bill has equity, and is not subject to the demurrers interposed. The decree is accordingly affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD, SAYRE, SOMERVILLE, and THOMAS, JJ., concur. MCCLELLAN, J., dissents.