## Napier v. Napier.

(Decided April 23, 1920.)

### Appeal from Laurel Circuit Court.

1. Husband and Wife—Selection of Domicile.—The selection of the matrimonial domicile ordinarily rests with the husband, but this selection on his part must not be unreasonably or arbitrarily exercised. He should have due regard for the comfort, welfare, safety and peace of mind of his wife.

2. Husband and Wife—Abandonment of Husband.—The wife is justified in abandoning her husband and his home when she is forced so to do to protect her life or health, or where she has reasonable grounds for believing that injury might result from her remaining there.

3. Husband and Wife—Abandonment of Husband.—That the husband refuses to permit his wife, who had abandoned him, to return to his home with a niece and nephew she has reared, each of whom is about twenty-one years of age, is not sufficient

ground for her remaining from her husband, where the father
of such children is living and has a home to which they can go.

4. Husband and Wife—Marriage Contract.—The obligation taken by
parties to a marriage contract should not be abandoned or disre-
garded upon slight causes, real or imaginary.

HAZELWOOD & JOHNSON for appellant.

RAWLINGS & WRIGHT for appellee.

OPINION OF THE COURT BY JUDGE QUIN—Reversing.

This is a suit for alimony instituted by appellant as
plaintiff below. Such a suit is maintainable without re-
gard to a divorce. Hulett v. Hulett, 80 Ky. 364. Each
party had been previously married.

Appellee had living with him four daughters ranging
in age from eleven to twenty-one years  Appellant had
no children of her own but had reared a nephew since
he was seventeen days old, at which time his mother died,
and she also had helped to rear a niece.  At the time of
appellant's second marriage November 14, 1915, the boy
was about sixteen years old and the girl was seventeen;
the latter is not physically strong.  Appellee understood
appellant's attachment for these children and consented
that she bring them to his home with her.

Under circumstances justifying such action appellant
abandoned her husband's home June 7, 1916, but they
thereafter lived together as husband and  wife  until
October 1, 1917.  As is so often the case the two sets of
children did not agree.  With commendable candor the
husband and wife speak of one another not perhaps in
terms of affection, but in a manner friendly and praise-
worthy.  Neither has aught but good to say of the other,
a situation that gives hope of a reconciliation and makes
possible  a  restoration  of  their  marital  relations.
Martha's demeanor was everything her name implies;
"Wild Bill," as he says he is called, while volunteering
the information that he came from a wild stock of peo-
ple, has shown no evidence of habits or character in keep-
ing with his nickname.  He appears to be an uneducated,
good natured, well meaning man; an indulgent father
who has suffered his children to grow up in ignorance
of or totally disobedient to those  rules  of  discipline,
respect and orderly conduct that should obtain in every
well regulated household.

But for the differences between the children and the unfriendly, rude and hostile attitude of his daughters toward their stepmother it is doubtful if there would have been any thought of litigation.

Prior to June 7, 1916, appellee's daughters, and especially the eldest, had in divers ways manifested their dislike for and antipathy to appellant, but on the day named they gave expression to their feelings in a very forceful and violent manner. Appellant had been away from home and returned for the purpose of removing her effects to other quarters. She was attacked by one of the daughters, hoe in hand, cursed and her life threatened; a gun was procured, but fortunately it was not discharged; she was assaulted by all four of the girls; they pulled her hair and practically tore her waist off, all this before her husband could separate them; appellee says "they were all mixed up in a pile."

Under conditions such as those appearing in this record, a recitation of which we deem unimportant, appellant was not compelled to remain in appellee's home and submit to this treatment.

Ordinarily, the selection of the matrimonial domicile rests with the husband, and so varied are the circumstances respecting the location and status of the home that no rule or principle of general application regarding same can or should be established. What would be reasonable and proper in one case might be wholly inadequate and unsuitable in another. Questions of this kind involve the fundamentals of society, are of the most delicate nature with which courts must deal, and each case must rest upon its own peculiar facts and circumstances. Clubb v. Clubb, 23 Rep. 650, 63 S. W. 587; Klein v. Klein, 29 Rep. 1042, 96 S. W. 848; Spafford v. Spafford, — Ala. —, 74 Sou. 354, L. R. A. 1917D, 773.

This right of selection on the husband's part should not be unreasonably or arbitrarily exercised. He should have due regard for the comfort, welfare, safety and peace of mind of his wife. Abandonment of the husband will not be attributed to mere wilfulness on the wife's part, when she is forced to leave his home to protect her life or health, or even where she has reasonable grounds for believing that injury might result from her remaining there.

Furthermore, the husband should do all he reasonably can to protect his wife from insult or abuse, regard-

less of the source from which it may come. It was appellee's duty to so control the conduct of his children as to accord to his wife at least decent treatment at their hands, and if unwilling or unable so to do, then, if possessed of ample means, he must provide a home where his wife will not be the victim of such domestic tyranny.

In Day v. Day, 84 Iowa, 221, 50 N. W. 979; Friend v. Friend, 53 Mich. 543, 19 N. W. 176, 51 Am. St. Rep. 161, and Hall v. Hall, 9 Ore. 452, will be found facts similar to those contained in the record before us and in each of which the wife was granted relief. See also Williamson v. Williamson, 183 Ky. 435, 209 S. W. 503.

Appellee's estate is hardly sufficient to permit the maintenance of two homes. His eldest daughter, the chief cause of the trouble, has married and is not living at home. A married son is living with his father, but offers to leave when appellant returns. Appellee's refusal to allow his wife to return with her niece and nephew is not of itself a sufficient cause for her remaining away from appellant; these children have about reached their majority and their father is living and they have a home to which they can go.

Before entering final judgment the chancellor put the parties on probation, and having concluded appellant had made no effort towards reconcilation the relief she sought was denied. We are not satisfied that appellee had fulfilled his obligations in this respect. He must put his house in order, so to speak, and having done so, it is appellant's duty to return. Both husband and wife profess their anxiety and desire to live together; we trust they are both sincere in these expressions. We are disposed to grant their wish, or at least make its realization possible.

When the married son shall have removed himself and family from his father's home, the eldest daughter living elsewhere, the way for appellant to re-enter and repossess herself as the mistress of the home will be open and she should avail herself of the opportunity thus afforded. With the more objectionable features eliminated the couple should live in peace and harmony.

As said in Martin v. Martin, 33 W. Va. 695, 11 S. E. 12:

"The best interests of society, decency and morality combine in demanding that the obligations taken upon

themselves by the parties who enter into the marriage contract should not be abandoned and disregarded upon the mere whim or caprice of either party, or upon slight cause, real or imaginary.''

The cause will be remanded to the circuit court with instructions to allow appellant alimony in the sum of twelve and 50/100 ($12.50) dollars per month from this date (April 23, 1920), until such time as appellee has conformed his home to the suggestions found herein, and duly notified his wife to that effect, nor should he attach any improper conditions to her return.

The chancellor will retain jurisdiction over this suit for the entry of such orders as may from time to time be deemed necessary.

In a letter written his wife in October, 1918, appellee said he belonged to the red, white and blue. Just what he meant by this statement is not clear, unless it was to express his patriotic tendency. His patriotism is further evidenced in the names bestowed upon his five children, to-wit: Louisiana, Minnesota, Georgia, Mary and Kenie (the last two doubtless for Maryland and Kentucky). Compliance with the views herein expressed and due regard for the sanctity of the marriage vows, will assist greatly in the preservation of the union, the ultimate aim, the supreme purpose, the ideal of the true patriot.

Wherefore the judgment is reversed for further proceedings in accordance herewith.