Argued at Pendleton October 27; affirmed December 22, 1931

# KLINGBACK *v.* MENDIOLA

(6 P. (2d) 237)

*Robt. D. Lytle,* of Vale, for appellant.
*Bruce R. Kester,* of Ontario, for respondent.

BROWN, J. The defendant asserts that there was an entire failure of evidence to establish ownership of the hay in either the plaintiff or the defendant at any time before it was destroyed; that there was no evidence to justify the verdict of $258.42 for the plaintiff; and that the verdict was contrary to law.

The plaintiff's farm on which the hay in question was grown is situate on the Owyhee river in Malheur county, Oregon; and, prior to the date of the contract which forms the basis of this action, he had leased the same to one J. R. Lynde. The defendant, who is engaged in the sheep industry, likewise owns a farm situate on the banks of this river, and across the stream from the farm of the plaintiff. One side of the defendant's farm is bounded by the river and the other three

abut on unappropriated government land, on which the defendant sometimes grazes his sheep in the winter months. On this government land adjoining his farm, he has also enclosed a small acreage as a stackyard for hay which he feeds to his sheep during the winter season.

For a number of years prior to the season of 1929 the defendant had purchased the alfalfa hay grown upon the plaintiff's premises. On or about June 10, 1929, the defendant forded the Owyhee river on horseback and took up with plaintiff and his tenant the matter of purchasing the 1929 crop of alfalfa. This conversation resulted in the oral contract whereby the defendant agreed to purchase, and the plaintiff and his tenant agreed to sell, the three cuttings of alfalfa hay which would be produced on plaintiff's farm during the season of 1929. The defendant likewise agreed to harvest the hay, haul it from the field on plaintiff's premises and stack it in his own stackyards, for $2 per ton. In accordance with this agreement the defendant harvested the hay, hauled it across the river and into his own private stackyards, and, for such services, was allowed a credit of $2 per ton on the purchase price thereof.

In considering this question, it is important to remember that hay can be transported from the plaintiff's to the defendant's side of the river in the summer season only. There being no bridge spanning the river in the vicinity of the two farms, it can be crossed only by means of fording; and, when the water is high or the river is covered with ice, it is rendered impassable even by fording. In the light of these facts, it does not seem reasonable to conjecture that the defendant would have hauled the hay the distance that he did haul it, across a stream as difficult of traversing as is the

Owyhee river at this point, and stacked it in his own stackyards, unless he had acquired title to it. Nor is it reasonable to suppose that the plaintiff would have permitted his crop of alfalfa hay to be so transported from his lands to this or any inaccessible place unless he had surrendered his title thereto. The testimony indicates that all the parties to this contract are men of honor, and mean to be fair in their dealings; and this fact lends strength to the opinion that, in the absence of contractual relations with the plaintiff, the defendant would not have removed the hay from the plaintiff's premises to his stackyards. After the destruction of the first and second cuttings in the defendant's stackyards, he harvested the third cutting and transported it away from plaintiff's premises and across the river to his stackyards where he stored his hay, not as a trader, but to husband his flock during the winter months. Clearly, his only purpose in acquiring these three cuttings of hay was to protect his flock of sheep from the rigors of winter, and he transported the hay to the point where he contemplated feeding it out to his stock. We repeat: The fact that the defendant entered upon the premises of the plaintiff to harvest the crop of growing hay, and did harvest it, and did haul it across the river and take it into his own possession, is a strong circumstance tending to show that the contract had been established. We are satisfied that the jury was justified in finding that his conduct in that regard constituted an acceptance of the terms of the agreement.

■ In the course of the trial and at the conclusion of the plaintiff's testimony the defendant moved for a nonsuit, which motion was denied. The court likewise denied defendant's motion for a directed verdict, and the ruling on both is assigned as error.

The testimony offered and received into the record precludes the granting of a nonsuit or a directed verdict in favor of the defendant. Moreover, the pleadings tend to establish the oral contract to be as alleged by plaintiff. Much of the evidence was in the record prior to the withdrawal of the defendant's alleged set-off wherein he asserted that the title to the hay was in the plaintiff. The circumstances attending the making of the contract, the practical construction given thereto by the parties litigant, and the execution of its alleged covenants by the defendant in severing the crop from the soil, curing it for hay, and transporting the product away from the field and away from the farm of the plaintiff on which it was grown to his own private stackyards situate beyond the swift waters of the Owyhee, all tend to defeat the claim of the defendant. He personally accepted the hay, and personally received it and caused it to be hauled to and ricked in his own stackyards, where it remained until it was destroyed by fire. And, from the time of such acceptance and delivery, all control thereof was in the defendant. The claim that proof was lacking to establish the material allegations of the complaint cannot be successfully set up.

 The defendant assigns error in the admission by the court of the testimony of plaintiff that the defendant cut and harvested the hay and hauled it to his own ranch across the river. This testimony was competent as a circumstance bearing upon the contract between the plaintiff and defendant. Any evidence which tends to render the fact probable or improbable is relevant: 3 Ency. of Ev., 517.

■ Error is predicated upon the court's denial of the right of the defendant to require an answer to the following query:

"Q. Now you do know, however, that after that time Lynde insured his hay as the owner of it, don't you?"

The only question in the case embraces the ownership of the hay. It was competent to receive testimony of any fact tending to establish ownership; but it was not competent for a witness to give his conclusion as to the ownership of the hay. However, later on in the trial of the case, it was shown that Lynde insured a portion of the hay as the owner thereof.

■■ The defendant asserts that the court erred in denying his motion to amend his answer, made at the conclusion of the plaintiff's case. The allowing or denial of a motion to amend the pleadings is in the discretion of the court, and only an abuse of such discretion will be reviewed: Oregon Code 1930, § 1-906. For local decisions applicable thereto, see list of authorities on page 318. This assignment is without merit.

■ The defendant criticizes the course of the plaintiff in not offering in evidence the written lease between the plaintiff and his tenant. The record discloses that the plaintiff testified fully concerning the terms of the lease, without objection on the part of the defendant. The terms of that lease have little to do with the case. But, in any event, the lease was proved in the course of the trial by the undisputed testimony of the plaintiff and his tenant, and the defendant made no objection.

The defendant asserts that the contract sued upon is within the statute of frauds, and that there has been no such performance of the contractual conditions as would avoid that statute.

Section 64-304, Oregon Code 1930, reads:

"Statute of Frauds—(1) A contract to sell or a sale of any goods or choses in action exceeding the value of $50 shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf.

"(2) The provisions of this section apply to every such contract or sale, notwithstanding that the goods may be intended to be delivered at some future time or may not at the time of such contract or sale be actually made, procured or provided, or fit or ready for delivery, or some act may be requisite for making or completing thereof, or rendering the same fit for delivery; but if the goods are to be manufactured by the seller especially for the buyer and are not suitable for sale to others in the ordinary course of the seller's business, the provisions of this section shall not apply.

"(3) There is an acceptance of goods within the meaning of this section when the buyer, either before or after delivery of the goods, expresses by words or conduct his assent to becoming the owner of those specific goods."

■ Under the Uniform Sales Act, the risk of loss follows the title. See section 64-406, Oregon Code 1930, which provides:

"Risk of Loss—Unless otherwise agreed, the goods remain at the seller's risk until the property therein is transferred to the buyer, but when the property therein is transferred to the buyer the goods are at the buyer's risk whether delivery has been made or not, except that:

"(a) Where delivery of the goods has been made to the buyer, or to a bailee for the buyer, in pursuance of the contract and the property in the goods has been

retained by the seller merely to secure performance by the buyer of his obligations under the contract, the goods are at the buyer's risk from the time of such delivery. * * *''

For an instructive treatise on this subject, see Mariash on Sales, page 418.

■ The defendant lays much stress upon the question of the ownership of the hay as between the plaintiff and his tenant. This question has no place here. The pleadings of the parties treat the plaintiff as the owner of the hay until such ownership passed to the defendant as hereinbefore stated, and we have no right to infringe upon the rules of pleading.

■ The testimony upon the question of the ownership of the hay at the precise time of the fire presented a question of fact for the determination of the jury under proper instructions as to the law applicable thereto. The instructions requested by defendant in relation to the ownership of the hay at the time it was destroyed were elaborate. Many of these requested instructions were embodied in the general charge to the jury, and the case was fully covered by the instructions given.

The plaintiff demanded judgment in the amount of $900, the balance due and owing him from defendant on the hay sold. The jury returned a verdict for plaintiff in the amount of $258.42. From an examination of the record, we are of opinion that the judgment of the trial court, based upon that verdict, was doubly fair to the defendant.

After a full consideration of all alleged errors, we are constrained to affirm the judgment appealed from. It is so ordered.

ROSSMAN and CAMPBELL, JJ., not sitting.