[Civ. No. 2788.   Fourth Dist.   Oct. 9, 1941.]

VICTOR FLORES et al., Respondents, v. H. K. SMITH et al., Defendants, D. H. SMITH, Appellant.

Evans, Pearce & Campbell and Harry W. Chase for Appellant.

David C. Marcus for Respondents.

GRIFFIN, J.—The original complaint, filed May 3, 1938, was for rescission of a contract for the exchange of lands and for the cancellation of deeds or in the alternative for damages. It alleged that about May 5, 1933, plaintiffs (33 in number), owners of interests in certain properties in Ventura County, quitclaimed those properties to defendants in exchange for 3715 acres of land in Mexico; that defendants induced and aided plaintiffs to form a group composed of Mexican people to colonize certain lands belonging to defendants in Mexico; that defendants fraudulently repre-

sented the Mexican lands, both as to value and as to character; that this group had no knowledge of the lands except that furnished by defendants. Plaintiffs alleged that about June 15, 1935, they first had knowledge of the true character of the lands and thereafter on April 21, 1938, these plaintiffs gave notice of rescission; that about April 28, 1933, they had some right, title or interest in certain properties in Ventura County, setting them out in their complaint by indefinite descriptions with certain alleged valuations; that plaintiffs would ask leave to amend the complaint and assert the true legal descriptions when ascertained. The complaint did not definitely name as a party defendant appellant D. H. Smith. Plaintiffs, in their prayer, asked for a rescission of the exchange agreement as to them, and for the return of the "above described property," or in the alternative for damages as ascertained.

The affidavit of service of summons shows that a copy of the complaint and summons was served on D. H. Smith, sued herein as John Doe One, on November 22, 1938.

Judgment by default against D. H. Smith was rendered on June 10, 1939, adjudging that he convey, transfer and return to the plaintiffs by good and sufficient deeds, any right, title and interest that he had in the property. The judgment then described the parcels of real property involved by legal description and then provided that the interest of defendant D. H. Smith "sued as John Doe One," be conveyed to plaintiffs or in lieu thereof that plaintiffs have judgment against him in certain sums totaling $31,515, together with interest at 7 per cent per annum from April 15, 1933.

July 5, 1939, appellant D. H. Smith filed a motion to set aside the judgment entered by default. A proposed demurrer and answer were submitted therewith. Affidavits and counteraffidavits were filed before the motion was heard and are a part of the record on appeal.

Respondents' counteraffidavits show that respondents' attorney did, on April 23, 1938, mail a copy of a notice of rescission to D. H. Smith, and he admittedly received a copy thereof, but claims that because the notice was entitled "To Clarence W. Ingham, H. K. Smith, John Doe One, etc." and referred to the properties as described in the complaint, he was not personally charged with notice of rescission.

The affidavit of respondents' attorney D. C. Marcus recites that the action was filed May 3, 1938; that on May 4, 1938, he received a telephone call from an attorney named Anspach, who related that he was the attorney for defendant D. H. Smith; that he would call at Marcus' offices for a copy of the complaint and summons; that on May 5, 1938, Anspach called at affiant's office, discussed the details of the complaint and told Marcus that ''Smith had advised him that he had no interest in said property or in the transaction whatsoever . . . that he had no knowledge of the condition of said land, its location or the agricultural purposes to which said land could be devoted; that said land was owned by another person other than D. H. Smith and that he had acted in such transaction as an intermediary''; that Marcus advised Anspach, as part of that conversation, that defendant D. H. Smith had been receiving the rentals for the past several years, and was selling and disposing of said properties; that at that time Marcus handed a copy of the complaint and summons to Anspach which were then and there read by him; that Anspach stated ''that it was not necessary to serve defendant D. H. Smith, personally; that he would enter an appearance on his behalf . . . before the expiration of the thirty days time''; that the foregoing visit was the one and only time that Anspach ever personally called at Marcus' office; that on June 2, 1938, Marcus called Anspach, advising him to file his answer; that Anspach stated that ''he was preparing the answer and asked for a week's additional time''; that on June 11, 1938, Marcus called Anspach again and Anspach replied ''that he was writing the answer . . . but that same would be done immediately and would be filed''; that again on June 22, Marcus called Anspach's office and advised his secretary to file his answer immediately; that on July 15, 1938, Marcus again called Anspach requesting that the answer be filed and that Anspach replied '' . . . that he would personally come to Marcus's office the following day and deliver the answer which he had already prepared and had been signed by said defendant Smith''; that on July 22, 1938, affiant called Anspach and said: ''that he could not understand his attitude''; that Marcus felt that Anspach should not take advantage of the situation because the complaint had been personally delivered to him and that service would have to be perfected on Smith before

he could proceed in the matter; that no action was taken by Anspach; that again on September 21, 1938, Marcus called Anspach who stated that "he was guilty of every name under the sun but that he was coming into Marcus's office on that day to apologize in person for his actions"; that Anspach failed to appear; that similar calls were made on October 8th and 15th; that on October 24th, 1938, Marcus called the defendant D. H. Smith directly; that Smith stated "that he had received a notice of rescission but that he had no interest in the property in Ventura County which was involved in this law suit nor did he at any time own or have any interest in the Mexican land, but he had nevertheless referred the matter of notice of rescission to Mr. Anspach, his attorney, who felt that under the circumstances he was not the party liable in the matter; that the persons responsible were H. K. Smith and Clarence Ingham; that they were the owners of the property and receiving the benefits therefrom, and it was up to them to protect their own interests; that he was only collecting the rents on the properties for H. K. Smith and Clarence Ingham; that Marcus informed Smith to contact Anspach, his attorney, and have him enter the appearance which he had promised on some ten different occasions; that Smith then stated "that he was under no obligation to file an answer as he had never been served with any complaint and he knew what his rights were and would protect them when the proper time arrived"; that he informed Marcus to call Anspach if he desired any further information as he was relying on Anspach's actions in not filing the answer; that on the same date Marcus called Anspach and was advised by his secretary "that he was not in and was not expected for a week"; that on October 25th, 1938, one Bloom, Marcus's associate, called Anspach, using the fictitious name of Edwards, and was immediately connected with Anspach; that Marcus thereupon talked with Anspach and advised him of his conversation with Smith; that Anspach stated "that he was coming down to Marcus's offices that same afternoon with the papers"; that Marcus stated to Anspach "that unless he entered his appearance he would be compelled to serve his client Smith"; that again Anspach failed to keep his promise; that Marcus thereupon ordered the service of the complaint on defendant

258

D. H. Smith; and that Smith was served with the complaint and summons on the 22d day of November, 1938.

Attached to the affidavit of Marcus are the telephone company's original statements for the months involved showing that telephone calls were made on the dates and to the number of Anspach at Glendale. The affidavit of Marcus further shows that prior to June 8, 1939, he again called D. H. Smith by telephone and advised him "that some seven months had elapsed since the service of the complaint upon him and that he had not answered the complaint nor had his attorney taken any action whatsoever"; and that he stated he had not taken a default but unless said defendant entered his appearance and answered the complaint he would be compelled to take his default and would do so on the 8th day of June, 1939. Judgment by default was not signed nor entered until the 16th day of June, 1939.

Appellant Smith secured new attorneys and filed the motion to vacate the default judgment approximately 30 days after the claimed conversation Smith had with attorney Marcus notifying him he was going to take a default. Attorney Anspach filed an affidavit in support of appellant's motion, reciting generally that D. H. Smith brought to him a notice of rescission which he received through the mails; that Smith had told him of the facts surrounding the transaction; that he advised Smith he had a valid defense; that he would get in touch with Marcus and would take care of the matter for him; that he did get in touch with Marcus on several occasions and advised him that D. H. Smith had a defense to the charge; that he agreed with Marcus that no further proceedings would be had until he, Anspach, was notified so that he could contact the other defendants and see if they desired to have him represent them; that he called Marcus on several occasions but was unable to find him in; that D. H. Smith brought to him the complaint that was served upon him and he advised Smith he would take care of the matter; that Marcus "stated or implied" in a conversation with him that no default would be taken without proper notice to Anspach; that Smith called him on June 8, 1939, and notified him that Marcus had called him and said that if an answer were not filed soon that he would enter a default; that he called Marcus and found he was not in and that Marcus failed to return the call; that on June 12, 1939,

H. K. Smith brought him a newspaper clipping stating that a default judgment had been taken in the case; that he (Anspach) advised D. H. Smith that Marcus had told him that he would take no default without first notifying him, and relying thereon, he had "unwittingly misled his client D. H. Smith" in this respect.

There was a long distance phone toll between the offices of the attorneys here involved. Respondents produced records of all long distance calls between their offices and those records showed but one such call by Anspach over the period involved, and that was in May, 1938. D. H. Smith, in his affidavit, denied several of the claimed conversations with Marcus, and admitted being served with a copy of the complaint and summons as entitled, but relied upon the advice of his attorney Anspach to the effect that judgment could not be taken against him by default because of the fact that the other defendants had not been served and that he relied upon such understanding; that relying upon his attorney he made no further inquiry into the matter until June 12, 1939, when he was in receipt of a newspaper clipping stating that 33 Mexicans who had exchanged acreage in Ventura County for property in Mexico had had a "wrong righted"; and that he immediately employed other counsel to institute the above-mentioned proceedings.

Upon these facts the appellant claims the judgment should have been set aside based upon his inadvertence, mistake, surprise and excusable neglect.

An application for relief under section 473 of the Code of Civil Procedure is addressed to the sound discretion of the trial court and its ruling either granting or denying the motion will not be disturbed unless an abuse of discretion clearly appears.

It was held in *United States* v. *Duesdieker*, 118 Cal. App. 723 [5 Pac. (2d) 916], that if defendants' failure to appear was the result of negligence on the part of their former attorney, they were chargeable therewith, and they could not claim that the trial court abused its discretion in refusing to set aside their default without showing that such neglect was excusable. The trial court in the instant case concluded that the affidavits of due diligence and excusable neglect were insufficient to set aside the judgment by default

on the grounds above stated. We find no abuse of discretion in this respect. (*Alferitz* v. *Cahen,* 145 Cal. 397 [78 Pac. 878]; *Beard* v. *Beard,* 16 Cal. (2d) 645 [107 Pac. (2d) 385]; *Wattson* v. *Dillon,* 6 Cal. (2d) 33 [56 Pac. (2d) 220].)

▇ The second contention presented on this appeal from the order refusing to set aside the judgment is that the judgment is erroneous and void for the following reasons: (1) that appellant never was a party to the action in that he was never mentioned in the complaint or summons and therefore the lower court was without jurisdiction to render a judgment against him, which judgment is therefore void; (2) that the judgment rendered against appellant did not require that plaintiffs do equity; (3) that the complaint on its face shows no reason for the unexplained delay in plaintiffs' attempting to rescind or to file their action; that their action is barred by laches; (4) that the judgment exceeded the relief asked for by the plaintiffs in the prayer of the complaint in that it included interest and properties not described in the complaint; (5) that the complaint was never amended to show the legal descriptions of the properties nor the true designation of appellant D. H. Smith.

Under this second contention it is pointed out that section 474 of the Code of Civil Procedure provides that "When the plaintiff is ignorant of the name of a defendant, he *must* state that fact in the complaint, and such defendant may be designated in any pleading or proceeding by any name, and when his true name is discovered, the pleading or proceeding *must* be amended accordingly." (Italics ours.) The plaintiffs in the instant action did not plead in the complaint that they were ignorant of the name of any defendant and that pleading at no time was amended to set forth any allegation that D. H. Smith was intended as, or to be made, a party defendant.

Section 580 of the Code of Civil Procedure provides: "Relief to be awarded to plaintiff. The relief granted to the plaintiff, if there be no answer, cannot exceed that which he shall have demanded in the complaint. . . . " ▇ A default judgment, whether entered with or without the action of the court, cannot properly be for an amount not shown by the complaint to be due. Interest may be allowed only to the extent to which it is claimed in the complaint. ▇ In an action involving the title to or rights in land,

if the default judgment describes the land differently from the complaint, it is erroneous and should be reversed on appeal or set aside on motion. (*Balfour-Guthrie Inv. Co.* v. *Sawday,* 133 Cal. 228 [65 Pac. 400] ; *McFarland* v. *Martin,* 144 Cal. 771 [78 Pac. 239] ; *Holman* v. *Vallejo,* 19 Cal. 498, 499; *Lamping* v. *Hyatt,* 27 Cal. 99; *First State Bank* v. *Blackinton,* 16 Cal. App. 141 [116 Pac. 311] ; *Brown* v. *Caldwell,* 13 Cal. App. 29 [108 Pac. 874].) The complaint in the instant action describes the various parcels of land belonging to respondents in this general language:

" . . . plaintiffs . . . held some . . . interest in . . . the following described real properties . . .

"Victor Flores and Teofilade Flores
308 North Sycamore Street
Santa Paula, California   value:   $825.00
"Soledad Garcia, Aurora Cachu and Jose Maria Cachu,
319 South Mill Street,
Santa Paula, California   value: $1650.00 . . .
"Alejo Garnica
Lot 7 block 10
Fillmore, California        value:   $825.00
"Lucina G. Bonilla
Fillmore, California        value:   $550.00"

The complaint was never amended to show the proper legal description of the property involved. The judgment described that property by its legal description. The various descriptions, as set forth in the complaint and in the judgment, are not comparable. The rule above cited, therefore, becomes applicable.

It should also be noted that in the prayer of the complaint no interest is sought. The judgment awards interest at 7 per cent from April 15, 1933. The judgment also reads in the alternative in this respect, that it provides that in event the described properties are not returned (no time specified) plaintiff should have judgment in the sums mentioned in the decree.

The complaint also seeks a rescission of. the exchange agreement. The answer of appellant, proposed for filing, in addition to alleging that the action is barred by section 338, subdivision 4 of the Code of Civil Procedure and by laches, avers that the title to the Mexican property involved was in Clarence W. Ingham; that appellant had only a one-third

interest therein; that Ingham deeded that property to respondents; that defendants paid respondents $2,500 as a part of the consideration, and that respondents have not tendered or offered to return the property or money thus received. Appellant denies generally the allegations of the complaint in reference to the fraud.

Under the rule above cited, the order denying appellant's motion to set aside the default judgment must be reversed.

There is also this additional reason: After the service of the complaint on appellant, the complaint was not amended as required by section 474 of the Code of Civil Procedure. Respondents did not seek said amendment before entering the default judgment nor did they include such a prayer in their complaint. The following authorities require a compliance with that section: *Roseborough* v. *Campbell,* 46 Cal. App. (2d) 257, 263 [115 Pac. (2d) 839]; *Baldwin* v. *Morgan,* 50 Cal. 585; *McKinlay* v. *Tuttle,* 42 Cal. 570; *Farris* v. *Merritt,* 63 Cal. 118; *Rosencrantz* v. *Rogers,* 40 Cal. 489; *Bachman* v. *Cathry,* 113 Cal. 498 [45 Pac. 814]; *Union Tank & Pipe Co.* v. *Mammoth Oil Co., Ltd.,* 134 Cal. App. 229 [25 Pac. (2d) 262]; *United States* v. *Duesdieker, supra.*

Order and judgment reversed.

Barnard, P. J., and Marks, J., concurred.