Argued November 18, 1953, reversed and remanded
January 27, 1954

# BURNETT ET AL. *v.* HATCH

266 P. 2d 414

*Bruce J. Manley,* of Medford, argued the cause for appellant. With him on the brief were Hanley & Manley and Edward B. Hanley, Jr., of Medford.

*Stanley C. Jones, Jr.,* of Medford, filed a brief for respondents.

PERRY, J.

This is a suit brought by the plaintiffs to quiet their title in and to certain real property described as follows:

> "Lots Twelve (12), Thirteen (13), Fourteen (14), Fifteen (15), and Sixteen (16), Block 7 of Central Point, Jackson County, Oregon."

The defendant appeared, alleging an interest in the real property above described, and the trial court determined upon plaintiffs' motion for a judgment on the pleadings that the defendant had no interest in or to the said real property, thereupon quieting the title in the plaintiffs free and clear of defendant's claims. From this adverse ruling the defendant has appealed.

The plaintiffs' complaint is in the customary form, alleging that they are the owners in fee simple of the real property described therein, and in sole possession thereof, subject to a mortgage executed by the plaintiffs to C. E. Gilkey and Grace Gilkey, husband and wife, on the 27th day of June, 1951, and duly recorded, and calling upon defendant to set up any claim, or claims, she may have in or to the real property.

The defendant answered, denying the plaintiffs' ownership, admitting the mortgage to C. E. Gilkey and wife, and by what she terms an ''answer and counterclaim'' (but which in fact is no more than an answer), sets forth the following facts: That she was prior to March 31, 1952, the wife of one Hugh Rae Hatch, also known as H. R. Hatch, having obtained a divorce from the said Hatch on that date; that the decree of divorce awarded to her, as her separate property, the property described in plaintiffs' complaint; that her husband had conspired with one Morris Bailey to convey the property to the said Morris Bailey to defraud the defendant of her rights in the property, and that in accordance with the conspiracy, conveyance was made on April 28, 1946, and duly recorded; ''that at the special instance and request of Hugh Rae Hatch a portion of the purchase price of said premises was paid from the personal funds of Eva M. Hatch''; that after the conveyance to Bailey, defendant's husband left the state

of Oregon and has since evaded service of process and attempts to contact him; that the plaintiffs and their predecessors in title took the conveyance to the property with full knowledge of the defendant's rights; that on September 15, 1945, a judgment was entered in the divorce suit in favor of the defendant for the sum of $200 as temporary support money, and for the further sum of $100 as attorney's fees, that had not been paid or satisfied.

The plaintiffs filed an answer to the so-called counterclaim (which in fact is a reply to the defendant's answer), and admitted that Hugh Rae Hatch and the defendant had been husband and wife, and for a portion of the time that this relationship existed Hugh Rae Hatch had been the owner of the land in question, in which defendant had a dower right; that Hugh Rae Hatch had commenced a suit for divorce against the defendant Eva M. Hatch, and that subsequent to the commencement of the divorce suit the husband had conveyed the property to Morris Bailey, and subsequently through other hands to these plaintiffs; and admitted that there had been entered a judgment in favor of Eva M. Hatch in the sum of $200 as temporary support money, and the sum of $100 as attorney's fees, on September 15, 1945. Plaintiff also admitted that in the final divorce decree of March 31, 1952, the trial court had awarded to the defendant as her separate property the property in question. By way of a further answer, plaintiffs alleged that the complaint as filed by the defendant's husband, Hugh Rae Hatch, in the divorce suit did not describe any of the real property, and particularly the property in question, nor did the answer in the divorce suit as filed by the defendant describe the real property or pray for an award of such real property as alimony (a copy of plaintiff's com-

plaint and of defendant's answer in the divorce suit is incorporated by reference in the answer of the plaintiffs' in the suit before us); that on the 31st day of March, 1952, the date of the trial of the divorce suit, by leave of the trial court an amendment was made in the defendant's answer describing the real property in question, and on that date a decree was entered granting the defendant a divorce from Hugh Rae Hatch and setting off to her as her sole property the property in question (all of which is shown by the decree, a copy of which was incorporated by reference and made a part of the plaintiffs' so-called answer to the counterclaim).

Subsequent to the filing of the plaintiffs' so-called answer to the counterclaim, the defendant filed a so-called "reply to answer to the counterclaim" (which in fact, if allowed by the Code of this state, should have been designated as a "rejoinder"). By this pleading defendant admitted all of the pleadings in the divorce case, including the allegation that the real property in question was not described in the original pleadings in the divorce suit until defendant's cross-complaint was amended by interlineation at the time of trial thereof.

The defendant contends that, having denied plaintiffs' title, it was incumbent upon plaintiffs to offer proof sufficient to sustain their title. However, the defendant, as shown above, admitted that the legal title had been in her husband and was transferred by him to one of plaintiffs' predecessors in title and through them to the plaintiffs. Having admitted the existence of the legal title in the plaintiffs, the burden of showing a superior right and title to the property rested with the defendant, and if her pleadings fail to show such lawful right, she cannot complain. *Durkin v.*

*Ward,* 66 Or 335, 133 P 345; 44 Am Jur 68, Quieting Title, § 83.

■ The defendant also contends that by reason of her advancing, at the request of her husband, some funds which were used in the purchase of the real property, and the husband having later "fraudulently transferred" this property, a resulting trust was created therein for her benefit. The allegation upon which the defendant relies reads as follows:

> "That this defendant was the wife of Hugh Rae Hatch, also known as H. R. Hatch; that during the marriage of said parties, said Hugh Rae Hatch took title in his name to the lots set forth in paragraph one of the plaintiffs' complaint; namely, Lots 12 through 16, Block 7, to Central Point, Jackson County, Oregon, and that at the special instance and request of Hugh Rae Hatch, a portion of purchase price of said premises was paid from the personal funds of Eva M. Hatch."

This court is committed to the proposition "that, where the purchase price is furnished by the wife and title to the property taken in the name of the husband, a resulting trust is presumed in favor of the wife." *Rhodes v. Peery,* 142 Or 165, 173, 19 P2d 418. The plaintiffs contend that this does not describe "an aliquot share or specific portion" of the property or that payment has been made out of "commingled or indistinguishable" trust funds. However, the pleading was not attacked either by demurrer or by a request that it be made more specific, definite and certain. So whether or not a trust in the property did in fact exist is a question to be determined by the trial court from the facts disclosed upon a trial of this matter.

The defendant also contends that the trial court was in error because the transfer of the real property

by defendant's husband to one Morris Bailey was made pending the divorce case for the purpose of defrauding her and was accepted by the grantee with knowledge of that purpose. The pleadings of the divorce suit (admitted by all parties) show that at the commencement of the suit the defendant was asking solely for a money judgment, and if any fraud was committed upon her it would be the prevention of the enforcement of such money judgment as she might receive by way of the decree. However, no money as alimony in gross was recovered in a judgment by her, and in such a situation the cases of *Griffith v. Griffith,* 74 Or 225, 145 P 270; *Weber v. Rothchild,* 15 Or 385, 15 P 650; and *Barrett v. Barrett,* 5 Or 411, are not applicable.

■ We need not determine at this time whether or not the doctrine of lis pendens is applicable in divorce cases [see 166 ALR 406] as we are of the opinion that if the doctrine is to apply the better rule requires that it is incumbent upon a party to fully describe in a pleading the real property claimed and request that the property, or an interest therein, be set apart to the claimant.

There is also another issue of fact raised by the pleadings in paragraph IV of defendant's affirmative answer which reads as follows:

"That Eva M. Hatch on the 31st day of March, 1952, secured a decree of divorce on her cross complaint against Hugh Rae Hatch, which decree awarded to her as her separate property the above described Lots 12 through 16, Block 7, of the City of Central Point, Jackson County, Oregon."

This allegation in effect charges that Hugh Rae Hatch was the owner of the real property on March 31, 1952, and that his interest therein, if any, was by the decree of the court transferred to the defendant. Therefore,

if the plaintiffs are in fact the holders of only the legal title, and the equitable title rested in Hugh Rae Hatch at the time of the divorce decree, the defendant by the decree became the owner of that equitable interest.

The plaintiffs contend, however, that the decree of the divorce court was void by reason of the fact that no notice was given to Hugh Rae Hatch, the plaintiff in the divorce suit, of the proposed amendment as allowed by the court.

While it is true that divorce suits are commenced in a court of general jurisdiction, a circuit court when acting in such matters is "exercising a special power conferred upon it by statute, and not according to the course of the common law", and is "a court of special and inferior jurisdiction, such jurisdiction being limited by the terms of the statute conferring the power. *Northcut v. Lemery,* 8 Or 316, 322". *Garner v. Garner,* 182 Or 549, 555, 189 P2d 397. When, however, the necessary jurisdictional facts are established, the force and effect of such a judgment is that of a valid judgment established in a court of general jurisdiction. 49 CJS 851, Judgments § 428; *Steiwer v. Steiwer,* 112 Or 485, 230 P 359; *Shaveland v. Shaveland,* 112 Or 173, 228 P 1090.

Generally, the existing elements of a court's jurisdiction are, (1) that the court has been granted the authority to exercise its powers in relation to the nature of the relief sought, (2) that the proper parties are, in contemplation of law, present in court, and (3) that if a particular thing is to be effected by the court's action, this thing must be within the territorial limits of the court. *Dippold v. Cathlamet Timber Co.,* 98 Or 183, 189, 193 P 909.

It must be conceded that the circuit court of Jackson county was granted the power to hear and determine the matter of a change in the marital status of Hugh Rae Hatch and Eva M. Hatch, the defendant in the case before us, and as incidental thereto, to provide a money judgment for the support of the defendant (§ 9-914, OCLA, as amended by Oregon Laws 1947, ch 228), and, also, to provide for a change of interest in the real property of the party in fault (§ 9-912, OCLA as amended by Oregon Laws 1947, ch 557). The pleadings show that both Hugh Rae Hatch and the defendant herein personally appeared in the divorce suit, and that the property involved by the decree was in Jackson county, Oregon; thus all of the necessary jurisdictional facts appear. The contention of the plaintiffs then resolves itself into whether or not the failure to give notice of the proposed amendment to the other party before the amendment was made in the divorce suit is jurisdictional so that that portion of the decree is void not merely voidable. Section 1-1006, OCLA, reads as follows:

> "The court may, at any time before trial, in furtherance of justice, and upon such terms as may be proper, allow any pleading or proceedings to be amended by adding the name of a party, or other allegation material to the cause; and in like manner and for like reasons, it may, at any time before the cause is submitted, allow such pleading or proceeding to be amended, by striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect, or when the amendment does not substantially change the cause of action or defense, by conforming the pleading or proceeding to the facts proved."

and § 9-107, OCLA, provides that this statute shall be applicable to suits in equity.

■ From the above it is seen that the matter of allowing amendments and the terms upon which they may be proper, before submission of the cause, insofar as the amendment "does not substantially change the cause of action or defense", rests in the sound discretion of the trial court, and it is only upon an abuse of this discretion that this court will reverse. *Klingbeck v. Mendiola*, 138 Or 234, 6 P2d 237; *Filkins v. Portland Lumber Co.*, 71 Or 249, 251, 142 P 578.

■ It is unquestionably an abuse of discretion for a court to permit a material amendment without notice to and in the absence of an adverse party. "It can hardly be said that a material amendment of a pleading, made in the absence of an adverse party and without notice to him, would be in furtherance of justice." *Avery v. Jayhawker Gasoline Co.*, 101 Okla 286, 225 P 544, 546. And the abuses of discretion of the trial court, if it should be considered such under the facts as set forth in the pleadings in this case, could be corrected only in a direct proceeding on appeal. *Ulrich v. Lincoln Realty Co.*, 175 Or 296, 304, 152 P2d 255; *Ralston v. Stone et al.*, 113 Or 506, 519, 232 P 631.

The plaintiffs herein were not parties to the divorce suit, and they could not be injuriously affected by the judgment·in that case, it being their contention that prior to the decree being entered therein Hugh Rae Hatch had parted with all of his right, title and interest in and to the real property in question. The only party affected would be Hugh Rae Hatch, if, as the answer alleges, he is in fact still the owner of an interest in the real property. *Ulrich v. Lincoln Realty Co.*, supra.

Hugh Rae Hatch was cognizant of the fact that he had commenced a divorce proceeding in the circuit

court to which an answer and cross complaint had been filed alleging that he was the owner of real property in Jackson county, Oregon; that the trial of the issues would be heard on a day certain; and a duty was imposed upon him to keep apprised of this fact. 52 Am Jur 32, Trial, § 10. He also knew that the trial court had power to permit amendments at the time of the trial so that an inadequate description could be made more definite and certain. Justice LORD, speaking in *Wright and Jones v. Edwards,* 10 Or 298, 305, said:

"\* \* \* It is true that vagueness, inaccuracy, or mistake in the description of lands will not vitiate the proceeding and render the sale a nullity when collaterally assailed, and rights of property have attached. The courts very properly hold, when jurisdiction has attached by the statement of proper facts, although defectively alleged, and by some inadvertence the lands are imperfectly described, the sale cannot be collaterally attacked \* \* \*."

The case of *Henderson v. Henderson,* 85 Cal App 2d 476, 193 P2d 135, appears to be very closely in point. This was a collateral attack on a decree in an annulment suit which awarded certain real property to the wife. The description of the real property in the complaint was as follows: "Equity in real and personal property, situated in Shasta County, California, and standing in the joint names of the plaintiff and defendant herein." It was urged that the judgment was void because all description of the real property was different from that in the complaint. The court said that the description was sufficient to enable an officer upon execution to identify it and sufficiently certain to give the court jurisdiction over it. The court continued:

"Counsel for appellant cites cases such as Flores v. Smith, 47 Cal. App. 2d 253, 117 P.2d 712, holding that where a default judgment describes real prop-

erty differently than it is described in the complaint the judgment is erroneous and will be reversed on appeal or other direct attack. These cases are not in point where the attack is collateral. 'A mere erroneous decision on a question of law * * * does not make the judgment void, if the court had jurisdiction of the subject matter and of the person of the defendant.' Wells Fargo & Co. v. City and County of San Francisco, supra, 25 Cal.2d 37, 40, 152 P.2d 625, 627. Nor are such cases as Petition of Furness, 62 Cal.App. 753, 218 P.61, where the description in the complaint and the description in the judgment on their face refer to different parcels, in point. Here the judgment refers to the same property described in the complaint, real property in Shasta County held in joint tenancy by the parties. The presumptions are in favor of the validity of the judgment and any facts consistent with its validity will be presumed. Wells Fargo & Co. v. City and County of San Francisco, supra, 25 Cal.2d 37, 40, 152 P.2d 625. As said in Scarf v. Aldrich, supra, 97 Cal. 360, 368, 32 P. 324, 327, 'the defective description in the petition and order to show cause did not affect the jurisdiction of the court, or the validity of the sale by the correct description * * *.'' (193 P2d 138)

See also Annotations, 111 ALR 1200.

Our decision in *Mumper v. Matthes,* 186 Or 357, 206 P2d 86, bears on the question. The case involves an administrator's sale in which the description of the land to be sold omitted the fourth boundary line and the description of the easterly boundary line was unintelligible, (p. 370). The sale was held to be void on collateral attack, but the opinion points out on page 370 that "No attempt was made to correct the error, either in the petition, the order for sale, the published notice of sale, or the order confirming the sale." The case is, therefore, distinguishable.

Also, the evidence in the divorce case as disclosed by the pleadings in this suit shows that Hugh Rae Hatch owned but this one piece of property in Jackson county.

■ We are of the opinion, under the alleged and submitted circumstances as shown by the exhibits of the proceedings in the divorce case, that if the divorce court abused its discretion in the matter of allowing the amendment, the judgment was at most voidable and not void.

In passing, we feel that we should note that the answer of the defendant alleges a judgment of temporary suit money and attorney's fees recovered and unpaid in the divorce suit prior to the transfer of title of the real property by Hugh Rae Hatch, which allegation is admitted by the plaintiffs. This judgment became a lien upon the real property by reason of subd (4), § 9-913, OCLA, (now subd (5) as set out and amended by ch 142 § 1, Oregon Laws 1945), passed subsequent to our decision in the case of *State ex rel. v. Tolls,* 160 Or 217, 85 P2d 366, 119 ALR 1370.

The above cause will be reversed and remanded that the trial court may determine the interest, if any, of the defendant in the real property arising out of any interest Hugh Rae Hatch may have had therein on the 31st day of March, 1952, and for such other proceedings as are not inconsistent with this opinion.

LATOURETTE, C. J., specially concurring.

The principal question involved on the appeal is the validity of the decree of divorce awarding defendant the real property involved.

It is a general rule that where a court has jurisdic-

tion of the subject matter and of the parties its judgment cannot be collaterally attacked. The reason for this rule is well stated in 31 Am Jur 177, Judgments, § 577:

> "The observance of the general rule denying the right collaterally to attack a judgment is required by a due regard for the repute of the courts and for the solemnity of judicial proceedings. The rule has been adopted as the result of weighing, on the one hand, the desire of the courts to avoid results which effect positive injustice to individuals, and on the other hand, considerations affecting public policy and convenience, especially in regard to the maintenance of the integrity of property rights acquired on the faith of judicial proceedings. In other words, the rule is based upon public interest in the final adjudication of controversies, or upon the conclusiveness which the law extends to judgments. The fact that a party has an opportunity for redress in a direct proceeding is also sometimes stated as an additional reason for the application of the rule."

In 49 CJS 815, Judgments, § 428, we find:

> "When jurisdiction has once attached, the court has a right to decide every question arising in the case, and errors of judgment or irregularities, however gross, which do not render the judgment absolutely void, are not available on collateral attack, and, moreover, this rule as to the nonavailability on collateral attack has been held to be applicable even where such errors or irregularities appear on the face of the record. This rule applies to the orders and judgments of probate courts. A judgment cannot be collaterally impeached merely because it was based on a mistake of fact or a mistake of law."

The above rule is adhered to in *Shaveland v. Shaveland,* 112 Or 173, 178, 228 P 1090; *Travelers Ins. Co. v.*

*Staiger,* 157 Or 143, 148, 69 P2d 1069; and *Ulrich v. Lincoln Realty Co.,* 175 Or 296, 304, 153 P2d 255.

See Annotation, 111 ALR 1200; *Mumper v. Matthes,* 186 Or 357, 206 P2d 82.

In the case at bar the trial court in the divorce suit had jurisdiction of the parties and of the subject matter. The cause of suit fell within a class over which the court could rightfully exercise jurisdiction. The court had jurisdiction to award defendant a divorce and to award to her the real property in question. § 9-912, OCLA, as amended by Oregon Laws 1947, ch 557. Her answer alleged that her husband was possessed of real property in Jackson county, Oregon, and was attempting to dispose of the same. The prayer of her answer, inter alia, called for general relief. At the trial the defendant testified that her husband owned the real property specifically described and the decree of the court corresponded therewith. Whether or not her pleading was amended, it seems to me, is immaterial at this stage of the proceedings.

It is asserted that since the complaint did not specifically describe the real property the same was insufficient, which would not warrant the entering of the decree. We have held in several instances that failure of the complaint to specifically describe the real property renders void the judgment based thereon. These cases must be distinguished from the instant case because the questions there considered were raised in direct proceedings rather than collaterally.

In *Altman v. School District,* 35 Or 85, 56 P 291, and *Horn v. United States Mining Co.,* 47 Or 124, 81 P 1009, we held that the sufficiency of the complaint cannot be collaterally attacked. Of course this would not be true if the defect were a jurisdictional defect.

To the same effect is 1 Freeman on Judgments, 5th ed, 761, where the following language is employed.

"In a previous section it was observed that pleadings bear a direct relation to jurisdiction. They present the controversy to the court and empower it to proceed in the cause. Regarded in that light, their office is a jurisdictional one and it is through them and by virtue of them that the court is put in control of the subject matter over which its general powers extend under the law. The parties are brought before the court by appropriate process, the subject matter is presented by some form of petition, bill, complaint, declaration or other application. It is apparent, then, that if the pleading satisfies this requirement and discloses a subject matter within a class over which the court's powers extend, it will suffice when made the basis of a collateral objection, irrespective of the completeness or quality of the allegations or their adequacy to justify the relief sought, or of any defects, irregularities or imperfections of form or substance. It is sufficient that the allegations challenge a judicial inquiry. For jurisdiction does not depend upon the sufficiency or fullness of the statement of the cause of action pleaded, nor is it of any importance collaterally whether the pleading does or does not state a cause of action, providing it sets forth a case within the court's powers. If a cause is pleaded belonging to a general class over which the court's authority extends, then jurisdiction attaches and the court has the power to determine whether the pleading is good or bad, and to decide upon its sufficiency as a statement of a cause of action. As in case of the power to decide any other legal proposition, jurisdiction does not depend upon the correctness of such decision, for though erroneous it is binding until corrected in some direct proceeding, and this notwithstanding the judgment is taken by default or emanates from the inferior tribunal, as, for instance, a justice's court.''

In arriving at a proper solution of this matter care must be taken in considering the cases to distinguish between collateral and direct attacks. Oftentimes, in a direct attack the courts have loosely and inadvertently used the words "void," "without authority," or "invalid" when the word "voidable" would have been more appropriate.

The cases cited in the dissenting opinion are distinguishable from the case at bar in that in the cases enumerated where a defective description in the complaint was voided, direct attacks on the decrees were employed. Of course, where a jurisdictional defective description is used, such as in the sale of property in an estate where the statute requires a description in the petition, the decree may be attacked collaterally.

BRAND, J., specially concurring.

Plaintiff instituted suit for divorce against his wife. The original answer of the defendant referred to "all of his [plaintiff's] belongings including the real and personal property * * * in which defendant herein had an interest * * *." It also alleged that "plaintiff is possessed of real and personal property in Jackson County." The plaintiff was thereby put on notice that his real property might be subjected to orders of the court. The only real property shown by the evidence to have belonged to the plaintiff in the divorce case was Lots 12 through 16, Block 7, Central Point, Jackson County, Oregon. At the trial of the divorce case the answer was amended to describe the real property as above set forth. In my opinion the trial court erred in entering a decree based upon the amendment which had not been served as required by OCLA, § 1-708. Under the circumstances of this particular case,

the error was not jurisdictional and the decree was not subject to collateral attack.

WARNER, J., dissenting.

I am compelled to dissent on the ground that the majority opinion avoids answering the most important issue advanced by this appeal. The opinion correctly states it as follows: "The plaintiffs contend  *  *  * that the decree of the divorce court was void by reason of the fact that no notice was given to Hugh Rae Hatch, the plaintiff in the divorce suit, of the proposed amendment [i.e., to paragraph IV of Mrs. Hatch's cross complaint] as allowed by the court." A very important corollary thereto is whether or not such a decree is vulnerable to collateral attack. It requires clear answer if this appeal is to be correctly resolved.

Moreover, nothing is said in or solved by the majority opinion concerning the necessity or want of necessity of service of the amendment upon Mr. Hatch as a condition precedent to vesting the court with authority to make a decree predicated upon the new matter contained therein. To the contrary, the majority opinion detours the problem of service projected by § 1-708, OCLA (ORS 16.430) and rests its conclusion upon a premise not raised by either party and in a manner not decisive of the cardinal question before us. Instead, the majority rests its final conclusion upon a gratuitous holding in these words:

"We are of the opinion, under the alleged and admitted circumstances as shown by the exhibits of the proceedings in the divorce case, that *if the divorce court abused its discretion in the matter of allowing the amendment, the judgment was at most voidable and not void.*" (Italics mine.)

I cannot and, I venture to say, no one will seriously challenge the right of the court in the Hatch suit to have authorized the amendment which it approved in that matter. Whether the court abused its discretion in so doing is not the issue determining the void or voidable character of the decree which subsequently followed. The majority opinion does not travel far enough. It pauses midway in its quest for the solution and rests its ultimate conclusion upon a relatively unimportant and indecisive matter.

Neither Mr. Hatch nor his counsel had notice of the challenged amendment nor an opportunity to traverse the new allegation, for immediately thereafter the court proceeded to hear the matter and on the same day the trial judge entered a decree of divorce in favor of Mrs. Hatch with the following provision:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that said Eva M. Hatch have as her separate property the following, to-wit:

"Lots 12, 13, 14, 15, and 16, Block 7, to the City of Central Point, Jackson County, Oregon * * *."

The defendant in this matter relies upon that decree to support her claim of title in the property which is the subject of this suit.

My position is (1) that the so-called amendment to Mrs. Hatch's cross complaint is a nullity because of the failure to serve it upon her husband and, therefore, it did not supersede the original cross complaint; (2) that the cross complaint was devoid of any specific description of real property owned by Mr. Hatch and that as a result of this pleading status the court never acquired jurisdiction of the subject matter, i.e., the real property described in the decree; and (3) that such a

jurisdictional defect rendered the decree void and subject to collateral attack insofar as it attempted to decree an interest therein to Mrs. Hatch.

I shall consider these several matters in the order presented above.

Failure to follow the directions of § 1-708, OCLA, rendered the so-called amendment inoperative to supersede Mrs. Hatch's original pleading in cross complaint. That section reads:

> "In all actions at law and suits in equity wherein an amended pleading is filed, such amended pleading shall be served upon all parties to said action or suit who are not in default, but as to all parties to said actions or suits who are in default or against whom a default previously has been entered judgment may be rendered in accordance with the prayer of the original pleading served upon them and neither the amended pleadings nor the process thereon need be served upon such parties in default unless such amended pleading asks for additional relief against such parties in default."

That statute is plain and unambiguous. It places a premium upon notice. Its effect is to toll further action on the amended pleading until the record reveals that such service was accomplished or was waived. It is mandatory in character and no amendment, even though authorized, becomes efficient or effective unless it is apparent that there has been a complete and satisfactory compliance with § 1-708. If the record is silent in this respect, then the tendered amendment, even though filed, does not operate to supersede the pleading it is designed to amend and is *functus officio,* conferring no new authority on the court and leaving the party who offers it dependent upon his original pleading for relief.

In *Cram v. Tippery,* 175 Or 575, 584, 155 P2d 558, we held, under authority of § 1-708, that where an amended complaint was filed but not served on all the parties defendant, the court was without authority to render judgment against any unserved defendant. Also see *Alery v. Alery, Jr., et ux.,* 193 Or 336, 341, 238 P2d 771. I make no claim for the cases cited beyond the fact that they are authority for the proposition that an amendment of a pleading without service upon the adverse party is, under § 1-708, ineffective against that party and does not supersede the original pleading sought to be amended and that the pleader's relief against such adversary is, by reason thereof, limited in scope and extent to the allegations of the original pleading.

The amendment was tendered and authorized on the day set for trial (March 31, 1952). Mrs. Hatch was in court in person and with counsel. The record indicates no service of the amendment upon Mr. Hatch, as required by § 1-708, nor waiver of such service. No contention to the contrary is made. It follows that Mrs. Hatch's tendered amendment was inoperative and the only controlling pleading was her original cross complaint.

Our next point of interest is the scope of the original cross complaint.

I pause to note that jurisdiction of the subject matter must appear from the pleadings and does not depend upon the existence of a suitable cause of action or the evidence subsequently adduced. *E. Henry Wemme Co. v. Selling et al.,* 123 Or 406, 417, 262 P 833; *Dippold v. Cathlamet Timber Co.,* 98 Or 183, 189, 190, 193 P 909, and authorities there cited; *Eagle Cliff Fishing Co. v. McGowan,* 70 Or 1, 7, 137 P 766. It is true, as

stated in the majority opinion, that it is essential to the jurisdiction that the *res* against which relief is sought must be within the territorial limits of the court; but that fact alone does not vest the court with power to accord any specific relief with reference thereto, unless the *res* is subjected by constructive seizure to the exercise of the court's power by being properly impleaded.

A divorce suit, insofar as it involves the disposition of any interest in real property, is in the nature of a proceeding *in rem*. In *Ross v. Ross et al.*, 21 Or 9, 13, 26 P 1007, consideration was given to the sufficiency of the pleadings in a divorce suit which failed to describe the real property of the adverse party, and the court there said:

"* * * according to well-settled principles of chancery practice, a decree which is to operate on the title to real property by divesting the title out of one of the parties and transferring it to the other, *operates upon the thing itself in the nature of a proceeding in rem,* and it is not perceived how the court can properly act upon such a subject when the thing to be affected is undescribed and unknown to the court, and the record is entirely silent in relation to every fact which, in ordinary cases, gives the court jurisdiction and enables it to act." (Italics mine.)

Concerning the necessity for a seizure of the *res* as a condition precedent to the exercise of the court's power with reference thereto, we find in *Frederick v. Douglas Co. et al.*, 176 Or 54, 65, 155 P2d 925, this statement by Mr. Justice Brand:

"In proceedings *in rem* there are two essential requirements. The first is that the *res* must be put under control by seizure or some equivalent act

such as attachment, institutions of a suit in equity, or proceedings to foreclose tax liens. Pennoyer v. Neff, 95 U. S. 714, 24 L.Ed. 565; Baillie v. Columbia Gold Mining Co., 86 Or. 1, 166 P. 965, 167 P. 1167; Willamette Real Estate Co. v. Hendrix, 28 Or. 485, 42 P. 514, 52 Am. St. Rep. 800; 21 C.J.S., Courts, § 84, p. 126.

"By constructive seizure of the property within its territorial jurisdiction the court exerts its power to subject the property seized to judgment. * * *"

In 3 Bancroft, Code Pleading, 2205, § 1353, under the caption of "Divorce and Separation", it is said:

"Although the statute authorizes the court to make disposition of the property of the parties, this can be done only where the property is brought before the court by the pleadings. To authorize the court to partition or otherwise dispose of the property of the spouses there must be appropriate allegations in the pleadings either of the plaintiff or the defendant. The ownership of the property and its description must be alleged with such certainty as to identify it. Property not referred to in the pleadings cannot be included in a decree of divorce adjudicating rights in property, since it is not within the jurisdiction of the court. * * *"

To bring the *res,* that is, the real property, within the jurisdiction of the court in a divorce suit, this court has long ago adopted and since followed an exacting rule of pleading. We find it well and clearly expounded in *Senkler v. Berry,* 52 Or 212, 215, 96 P 1070, in these words:

"It is now the settled law of this State, that in divorce proceedings the title to real property authorized to be awarded to the successful party by Section 511, B. & C. Comp., is not transferred by force of the statute, but by force of the decree; that to enable the court to act judicially on the subject of property in such cases, and to make a decree that

shall have the effect of divesting the title to real property out of one of the parties to the suit and transferring it to another, it must appear in the pleadings, not only that such party from whom it is proposed that the title shall be taken is the owner of the property, but also of what that property consists; and that, as the decree has the effect of transferring the title, it must be one of the muniments of the title and should identify the parcel or parcels intended to be transferred or affected thereby with as great certainty as is required in ordinary conveyances. * * *''

Also see *Schafer v. Schafer,* 122 Or 620, 639, 260 P 206, 59 ALR 707; *Perkins v. Perkins,* 72 Or 302, 306, 143 P 995; *Ross v. Ross et al.,* supra, at page 11; *Hall v. Hall,* 9 Or 452, 456; *Bamford v. Bamford,* 4 Or 30, 35.

From the foregoing we learn that the pleading must not only specifically describe the real property in which title is sought ''with as great certainty as is required in ordinary conveyances'' (*Senkler v. Berry,* supra) but the pleader must allege that the party to be divested is the owner thereof. More is required of the pleader, however, than a sufficient legal description. To give the pleading the quality of completeness there must be a claim for an investment of title in the pleader by a proper allegation or prayer. In short, an averment with reference to the real property, to be effective as a basis for the acquisition of title, must have as its pleaded objective a prospective ownership therein; otherwise, the pleading of the description is ineffectual to lay the basis for a disposition of the title by decree. *Perkins v. Perkins,* supra, at page 306; *Hall v. Hall,* supra, at page 456.

With these long established rules before us, let us now examine the contents of the original cross com-

plaint in *Hatch v. Hatch*. The nearest approach to the subject of real property is in paragraph XI reading:

"That the defendant is the owner of a yacht which he claims to be worth $48,000.00 now in a Seattle harbor, and is possessed of a Packard automobile in storage in Sacramento, California, which he claims to be of the value of $5,000.00. That in addition thereto the plaintiff is possessed of real and personal property in Jackson County, Oregon, of the probable value of $5,000.00 and did on or about July 25, 1945, from the proceeds of an auction sale conducted by him receive the approximate sum of $10,000.00 in cash."

There is no claim or prayer for any interest therein and, of course, reference to any real property possessed or owned by Mr. Hatch is in the baldest generality. It is plainly patent that the purpose of this allegation was to lay a foundation for the only relief prayed for by Mrs. Hatch, aside from a decree of divorce, and that is for "judgment against the plaintiff for the sum of $5,000.00 in lieu of alimony".

Even had the amendment been properly made, it would not have availed the pleader of any advantage which would have warranted a decree of an interest in any particularly described real property, for the amendment as tendered and attempted to be made effectual by interlineation did not amend paragraph XI above quoted but was an addition to a subparagraph of paragraph IV (the paragraph of the cross complaint devoted exclusively to a recital of the various items of alleged marital misconduct, made in support of the charge of cruel and inhuman treatment). I illustrate by setting out paragraph IV as it appeared after the tendered amendment:

"That immediately thereafter he conducted a sale attempting to dispose of all of his belongings

316

> including the real and personal property *(said real property is legally described as Lots 12, 13, 14, 15, and 16, Block 7, of the City of Central Point, Jackson County, Oregon* * * *)* in which defendant herein had an interest and including some personal belongings of the defendant." (Italics mine.)

The italicized language of the foregoing quotation represents the matter included by interlineation. The significant thing is that neither before nor after the abortive amendment did the cross complaint *by allegation or prayer* make a claim or ask for a decree of any interest in the subject real property, a further fatal defect in pleading matters of this kind. *Perkins v. Perkins,* supra; *Hall v. Hall,* supra.

It has been earnestly suggested (though not reflected in the majority opinion) that that part of paragraph XI reading "That * * * the plaintiff is possessed of real and personal property in Jackson County, Oregon" is sufficient to vest the court with jurisdiction over the subject matter. Whatever may be the rule in other proceedings relating to the disposition of an interest in real property, it is clear that in a divorce suit in Oregon such an allegation is palpably insufficient to give the court power to make any disposition of title to such real property. Here the rule is unusually strict, as manifested by a study of *Perkins v. Perkins,* supra.

In the Perkins case the defendant wife, in a cross complaint to a divorce suit instituted by her husband, as shown by the record here, specifically described certain real property owned by the husband in these words: "* * * Six Hundred *(600)* acres of land of first class farm and grazing land, described as follows to-wit * * * [then follows a particular description

to parcels totaling *540* acres as situated in Coos county, Oregon].'' (Italics mine.) Thereafter, in granting a decree of divorce to the wife, the court vested her with an undivided one-third interest in and to the *540* acres specifically described in her cross complaint and also added a parcel of *80* acres situated in a different section of the same township and range wherein the *540* acres were situated. On appeal this court held, with reference to the additional 80 acres:

    ''* * * This land was not described in the answer, and it was not mentioned in the evidence. The rule is well established in this state that where a party to a divorce suit asks for a decree of divorce, and desires, also, to obtain a decree for one third of the real property owned in fee by the adverse party, it is incumbent on him to set forth in his pleading a description of such property and to ask for a decree for an undivided one third thereof, and, if he fails to do so, he waives all right thereto, and *the court has no power to grant him any part of such property* * * * [citing cases]. The decree of the court below, in so far as it attempted to grant to the defendant a part of the west half of the northwest quarter of section 27 in township 29 south, range 14 west of the Willamette meridian, is invalid, and said decree will be so modified as to omit all reference to said parcel of land.'' (Italics mine.)

It will be observed that in the Perkins case the rejected description was far more complete than found in the cross complaint in *Hatch v. Hatch.*

Tested by the foregoing rules the original cross complaint, by reason of the absence of an adequate description of the instant real property, conferred no jurisdiction of the property upon the court and, therefore, the resultant decree in *Hatch v. Hatch* transferred no title to Mrs. Hatch.

With the foregoing results in mind, I now approach the paramount matter for consideration: Is a decree which makes a disposition of an interest in real property, not warranted by the pleadings, vulnerable to a collateral attack such as is here made against the decree in *Hatch v. Hatch?*

It is a well established principle of law that a decree or judgment on a matter outside an issue raised by the pleadings is a nullity and is nowhere entitled to the least respect as a judicial sentence. *McLean v. Porter,* 148 Or 262, 271, 35 P2d 664; *State ex rel. Dean v. Dean,* 136 Or 694, 697, 300 P 1027, 86 ALR 79; *May v. Roberts,* 133 Or 643, 657, 286 P 546; *Reed v. Hollister,* 106 Or 407, 415, 212 P 367.

This court has heretofore held in divorce suits that an excessive grant by decree of an interest in real property not supported by proper pleading is jurisdictional and beyond the court's powers. This being so, it is subject to collateral attack. Note the language employed by this court in *Perkins v. Perkins,* supra: "* * * the court has no power to grant him any part of such property * * *." (Italics mine.)

This court has defined a want of jurisdiction as a loss of power to act. *Marsters v. Ashton,* 165 Or 507, 512, 107 P2d 981. The court, speaking through Mr. Justice RAND in *Reed v. Hollister,* supra, said, at page 414:

"* * * Jurisdiction is said to be the right to adjudicate concerning the subject matter in a given case, and includes not only the power to hear and determine, but also the power to render the particular judgment in the particular case, as well as the power to enforce the judgment when rendered, and jurisdiction of the subject matter means juris-

diction, not only over the particular case, but over the class of cases to which a particular case belongs * * * .''

Also see *State ex rel. v. Crawford,* 159 Or 377, 388, 80 P2d 873; *Walker v. Fireman's Fund Ins. Co.,* 122 Or 179, 191, 257 P 701; *Harney Valley Irr. Dist. v. Bolton,* 109 Or 486, 491, 221 P 171; *Ralston v. Bennett,* 93 Or 519, 523, 183 P 766; *In re McCormick's Estate,* 72 Or 608, 616, 143 P 915, 144 P 425.

*Northwestern Clearance Co. v. Jennings,* 106 Or 291, 209 P 875, 210 P 884, was a suit involving a collateral attack upon a previously rendered judgment wherein the court cited with approval *Sache v. Wallace,* 101 Minn 169, 112 NW 386, 118 Am St Rep 612, 11 Ann Cas 348, 11 LRA NS 803, as follows:

> " 'When the court goes beyond and outside the issues made by the pleadings, and in the absence of one of the parties determines property rights against him which he has not submitted to it, the authority of the court is exceeded, even though it had jurisdiction of the general subject of the matters adjudicated. Such a departure cannot be held a mere irregularity. * * *' ''

Later, at page 310 this court holds:

> "A judgment of a court acting without jurisdiction or in excess of its jurisdiction is void and subject to collateral attack: 11 Cyc. 702; 23 Cyc. 681, 1074; Wright v. Edwards, 10 Or. 298, 302; Hoover v. King, 43 Or. 285 (72 Pac. 880, 99 Am. St. Rep. 754, 65 L.R.A. 790)."

I submit that if the court had *no power* to act judicially, it is equivalent to a want of jurisdiction rendering such a decree subject to collateral attack. 49 CJS 822, Judgments § 421.

The foregoing conclusions and definitions find support in the following statement from 1 Freeman, Judgments 5th ed, 733, § 354:

"* * * in the actual rendition of the judgment, the court must remain within its jurisdiction and powers. For it is the power or authority behind a judgment, rather than the mere result reached, which determines its validity and immunity from collateral attack. A wrong decision made within the limits of the court's authority is error correctable on appeal or other direct review, but a wrong, or for that matter a correct, decision *where the court in rendering it oversteps its jurisdiction and power is void and may be set aside either directly or collaterally. Such excess of authority or power is akin to a want of jurisdiction over the subject matter* * * *

"Whether the court lacked power to act in the first instance *by reason of its failure to acquire jurisdiction over the subject matter* of the parties, or having been invested with such power, proceeded to make a determination outside or beyond the legitimate scope thereof, the result is the same. * * *"
(Italics mine.)

For the foregoing reasons the decree in *Hatch v. Hatch* is insufficient to support a claim of fee simple ownership in Mrs. Hatch and the decree in the instant suit should be affirmed insofar as it decrees the plaintiffs Burnett to be the owners in fee simple of the subject property but modified (for the causes assigned in the majority opinion) by subjecting the same to the lien of that certain judgment obtained by Mrs. Hatch in the divorce suit dated September 15, 1945, for $200 support money and the further sum of $100 as attorney's fees.