[Civ. No. 27232. Second Dist., Div. Two. Mar. 2, 1964.]

**J. L. RUDE, Plaintiff and Appellant, v. HARRY C. COGEN et al., Defendants and Respondents.**

---

*Retired judge of the superior court sitting pro tempore under assignment by the Chairman of the Judicial Council.

Charles A. Zeller and Litts, Mullen & Perovich for Plaintiff and Appellant.

Harry C. Cogen, Isador I. Smuckler, in pro. per., and Robert S. Cogen for Defendants and Respondents.

ROTH, J.—Respondents Harry C. Cogen and Isador I. Smuckler (hereinafter referred to as ''Respondents'') are attorneys and are two of a number of other defendants named in this action. The other defendants are not parties to this appeal. Respondents demurred to and made a motion to strike plaintiff's (appellant's) second amended complaint. The second amended complaint, which was the third unveri-

fied complaint filed, asked for damages in the sum of $100,000 against respondents and seeks to set aside a judgment entered against appellant in a preceding action, numbered 655373, records of the Superior Court of the State of California in and for the County of Los Angeles. A demurrer to the first amended complaint was sustained with leave to amend on condition that appellant would file a verified second amended complaint. Appellant filed an unverified second amended complaint and respondent's motion to strike the second amended complaint was granted and demurrers thereto sustained without leave to amend. Appellant appeals from the ensuing judgments of dismissal in favor of respondents. The three complaints filed will be treated as one for the purpose of ascertaining the facts which appellant has alleged and will hereinafter be referred to as "the complaint."

Appellant alleges that as a result of a civil conspiracy between respondents and defendants S. Tilden Norton, Esther Norton and appellant's ex-wife, Elizabeth Norton Rude, the action numbered 655373 referred to above, (herein called "Children's action") was brought against appellant and that in the Children's action a judgment was obtained against him on or about July 3, 1959, which, among other things, provided for his removal as trustee for S. Tilden Norton, Esther Norton and Elizabeth Norton Rude, and also provided for his removal as trustee for the Rude children, to wit: John, Paul Daniel, and Judith. Said judgment procured in the Children's action provided in addition that appellant pay the sum of $27,533.84, together with interest, to each of said named Rude children.

Appellant further alleges that Respondent Cogen ("Cogen") had intentionally alienated the affections of appellant's children (it is not made clear whether said affections were alienated to Cogen or to some other person), and that the Children's action was brought, among other reasons, for the purpose of further alienating the affections of said children. Appellant further alleges that the judgment in the Children's action was procured by the extrinsic fraud of Cogen, because Cogen, appellant says, threatened appellant with criminal prosecution for embezzlement if appellant appeared in the Children's action and because of said threat appellant appeared only by way of an attorney employed by him. Appellant alleges further that he was by said threat prevented from taking part personally in said trial by testifying or otherwise and because of his failure so to do, no real contest,

fair trial or adversary proceeding was had. It also appears however that the attorney employed by appellant advised appellant not to appear in the Children's action.

Other than by statements of what the judgment provided, as recited above, we are not told by any of the allegations of the complaint what kind of proceeding the Children's action was. It appears to have been one for the removal of a trustee and an accounting.

It appears also from the allegations of the complaint that there may have been at least one other action of which appellant complains. Thus he alleges, that ". . . defendant . . . Cogen in the course of his representation of . . . the former wife of plaintiff . . . had deliberately encouraged and been instrumental in the unreasonable, inhuman curtailment of plaintiff's right of visitation with his minor son. . . ."

Respondent Smuckler is alleged to be a conspirator, but how he played his part is left completely vague and uncertain since all of the overt acts alleged are charged to Cogen. The complaint does make it clear however that after the judgment in the Children's action, Smuckler ". . . was appointed as 'Next Friend' of the infant plaintiffs therein, . . . [and] . . . ISADOR I. SMUCKLER, who is presently, as such Next Friend, proceeding in the courts of England at London in an endeavor to enforce said judgment against the plaintiff; that said defendant [Smuckler] is and at all times herein mentioned has been aware of the facts concerning the acquisition of said judgment as herein alleged." The judgment referred to in the quoted excerpts is the judgment in the Children's action.

Appellant asserts that the conduct above outlined was intended by the respondents to cause and did cause appellant to suffer fright, mental grief, shock and distress, the disturbance of his emotional tranquility, and permanent injury to his health and nervous system, and was designed to place him in fear of his personal safety, and that said conduct was calculated to damage appellant by taking away from him all of his property and assets, proximately resulting in appellant's illness and causing him bodily harm to his damage in the sum of $100,000.

No other allegations of fact can be gleaned from the complaint than those which are set out above.

█ Omitting at this point the so-called allegation re extrinsic fraud which will be treated separately, it appears to us that all that happened to appellant was that he lost one or more lawsuits, and is now attempting to collect damages

against the attorney or attorneys who represented the successful parties in one or more of those lawsuits.

We understand that a personal judgment against appellant growing out of the handling of trust funds for his children will cause ". . . mental grief, shock and distress. . . ." We are sure too that such grief, shock and distress is accentuated by the action of the children who through a "Next Friend" have followed appellant to a foreign country to collect the judgment rendered in their favor against appellant. What we don't understand is how on such facts appellant can predicate any cause of action against the attorneys who represented parties adverse to appellant.

We understand too that when a husband and wife are separated and the custody of children is involved, that a limitation of the father's visitation rights would cause emotional upset to a devoted father, which emotional upset may be variously defined as mental grief, shock and distress. We don't understand how such a limitation of rights predicated on the facts alleged by appellant can create a cause of action against the attorney or attorneys who represented the mother.

A mere recitation of the alleged facts and appellant's prayer makes it obvious that if appellant is on solid ground, the concept of adversary proceeding upon which our trial system is founded will have to be abandoned.

 Appellant urges extrinsic fraud. The full allegation is in the footnote.[1] We accept the statements in the allegation as true for the purposes of this opinion.

---

[1] ". . . that said judgments were procured by extrinsic fraud by virtue of the activity and conduct of HARRY C. COGEN in connection therewith; that by reason of the existence of said extrinsic fraud, no adversary proceeding was had therein, and the plaintiff was fraudulently prevented from presenting his claim or defense so that there was no real contest in said action; that none of said parties was entitled to said judgments and plaintiff had expenses and disbursements in said accounting which would have defeated the claims of the parties procuring said judgments; that threats of criminal prosecution for embezzlement were made to the plaintiff by said HARRY C. COGEN if said plaintiff should appear in said actions; that in truth and in fact, plaintiff had not been guilty of any criminal offense for which he could have been charged or upon which he ever was charged, as threatened by said HARRY C. COGEN; that said HARRY C. COGEN was instrumental in said plaintiff not personally appearing to answer the claims made in said action or to testify therein, and said HARRY C. COGEN was instrumental in asking FORREST GREENBERG, an attorney who appeared to represent the plaintiff in this action in said proceeding, to present to the Court an affidavit signed by the plaintiff setting forth certain matters constituting a defense to said action, which said affidavit was excluded

It appears from the allegation that the threat was made by Cogen; that appellant was represented by an attorney in the Children's action and that "... [appellant's] own attorney advised him against appearing in said proceeding. ..."

Further, it appears inferentially from the allegations of the complaint that the embezzlement that would have been charged was in connection with appellant's handling of trust funds for his children. When the evidence of the alleged coercion, duress or fraud could have been presented to the court in the very action, to wit: the Children's action, which is the action appellant alleges he was kept away from, so that "... full examination of the facts could be made and full protection given to the rights of the parties, equity will not interfere but will leave the parties to the fraudulent transactions where they have placed themselves. (*Mitchell* v. *Cline*, 84 Cal. 409, 416 [24 P. 164].)" (*Hendricks* v. *Hendricks*, 216 Cal. 321, 323 [14 P.2d 83]; *Thompson* v. *Thompson*, 38 Cal.App.2d 377, 380 [101 P.2d 160].)

 Nothing is alleged to show that appellant was prevented from presenting all of his case in the Children's action by reason of his not having taken part personally therein. There is a statement that an affidavit made by him and presented by his attorney to the court "... was excluded from evidence. ..." He alleges too that he had expenses and disbursements in the Children's action which would have defeated the claims of the parties procuring the judgment rendered therein. Assuming these specifications have merit, there is no allegation that evidence of the matters stated in his affidavit or in respect of expenses and disbursements was not otherwise available at the time of trial of the Children's action.

In *Ringwalt* v. *Bank of America*, 3 Cal.2d 680, the court said at page 684 [45 P.2d 967]: "Extrinsic fraud has been many times defined and quite recently in the case of *Caldwell* v. *Taylor*, 218 Cal. 471 [23 P.2d 758, 88 A.L.R. 1194], we had occasion to refer to the definition contained in the leading case of *United States* v. *Throckmorton*, 98 U. S. 61 [25 L. Ed. 93] to the effect that it consists of some 'fraud practiced directly upon the party seeking relief against the judgment or decree' by which 'that party has been prevented from

_from evidence in the course of said proceeding and without the personal appearance of the plaintiff J. L. Rude; that as a consequence of defendants' conduct and threats as herein alleged, plaintiff's own attorney advised him against appearing in said proceeding, and plaintiff did not appear therein or testify therein; ..."_

presenting all his case to the court.' '' Examples of extrinsic fraud given in the *Throckmorton* case are the unsuccessful party's being kept away by fraud and deception practiced on him by his opponent, as by keeping him away from court by false promise of compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat, or when the attorney regularly employed sells out his client's interest to the other side. Nothing alleged by appellant meets any of the tests of extrinsic fraud.

However, even if the alleged threat constituted extrinsic fraud, no facts are set forth in the complaint which would indicate that appellant is entitled to a judgment setting aside the judgment in the Children's action. ■ One who invokes equity for relief from a judgment must not only set forth the matters wherein the judgment is unjust or was fraudulently obtained, but he must also allege that he had and has a meritorious defense to the action wherein the judgment was taken against him. *Parsons* v. *Weis*, 144 Cal. 410, 417 [77 P. 1007]. It is incumbent upon the complainant to plead and prove that the result in the main action would have been different had the fraud or mistake not occurred. *Wilson* v. *Wilson*, 55 Cal.App.2d 421, 427 [130 P.2d 782].

■ Appellant alleges that he had expenses and disbursements in the Children's action which would have defeated the claims of the parties procuring the judgment rendered therein, and that he had a ''good and sufficient defense to all claims'' in the Children's action and that none of the parties thereto was entitled to the judgment rendered therein. These are merely conclusions. The following language of the court in *Huron College* v. *Yetter*, 78 Cal.App.2d 145, at page 150 [177 P.2d 367], is apposite in that connection. ''Before a party may invoke the aid of equity for relief from a judgment he must not only allege matters wherein the judgment is unjust or was fraudulenlty obtained, but he must also allege that he has a meritorious defense to the action or proceeding wherein the judgment, decree or order was obtained. In other words, facts must be alleged, not merely as ultimate facts, but such facts must be alleged as would warrant the court in determining that if the facts so alleged be proven a different result would ensue. *In the case at bar, the pleader in the first count sets forth no facts from which the conclusion could be drawn that were an accounting had there*

*would be a balance in favor of or against the appellants. ...''* (Italics added).

The judgments are affirmed.

Herndon, Acting, P. J., and Kincaid, J. pro tem.,* concurred.

---

*Retired judge of the superior court sitting pro tempore under assignment by the Chairman of the Judicial Council.