[Civ. No. 32148.   Second Dist., Div. Five.   Jan. 20, 1969.]

H. A. PULASKI, INC., Plaintiff and Respondent, v. ABBEY CONTRACTOR SPECIALTIES, INC., Defendant and Appellant.

Kellogg & George, Scott D. Kellogg, Lempres & Seyranian and Roderic Duncan for Defendant and Appellant.

Donald F. Yokaitis for Plaintiff and Respondent.

AISO, J.—A default judgment which adjudged the plaintiff, H. A. Pulaski, Inc., a California corporation (hereafter Pulaski), as having the sole and exclusive right as against defendant Abbey Contractor Specialties, Inc., a corporation (hereafter Abbey), its employees and assigns, to funds due from an Enco Construction [Company] in the sum of $4,450 and from a Wayne Pendergast in the sum of $9,415, and which ordered that Pulaski recover from Abbey the sum of $13,865, with interest thereon from June 14, 1966, in the sum of $522.66 and costs of suit, with the sum of $13,865 to be reduced by any amounts Pulaski should recover from Wayne Pendergast, was entered January 3, 1967.

A post-judgment minute order of February 28, 1967, denied Abbey's motions to vacate entry of default and default judgment and for permission to file answer and cross-complaint and for change of venue.

We construe the ambiguous notice of appeal liberally as a notice of appeal from the judgment entered January 3, 1967, and the post-judgment order of February 28, 1967.

The only issue upon this appeal is whether the trial court

abused its discretion in denying Abbey's motion under section 473 of the Code of Civil Procedure to set aside the entry of default and the default judgment. Timeliness of the motion is not disputed. We have examined the record and have concluded that this case presents a situation where the trial court's denial of relief should be upheld.

Appellate courts bear in mind that cases should be heard upon their merits whenever possible and they scan orders denying motions to set aside defaults with greater scrutiny than orders granting relief. (See, e.g., *Crittenden* v. *Crittenden* (1963) 221 Cal.App.2d 299, 300-301 [34 Cal.Rptr. 428]; *Kessler* v. *Hay* (1962) 211 Cal.App.2d 164, 166 [27 Cal.Rptr. 106].) Nevertheless, " 'It is a rule as familiar as any to be found in the books that an application to vacate a default under section 473, Code of Civil Procedure, is addressed to the sound discretion of the [trial] court and will not be disturbed except in a case of manifest abuse of discretion. Such long established rules should be consistently and impartially respected. . . .' " (*Gudarov* v. *Hadjieff* (1952) 38 Cal.2d 412, 418 [240 P.2d 621]; accord *City Bank of San Diego* v. *Ramage* (1968) 266 Cal.App.2d 570, 579 [72 Cal. Rptr. 273]; *Arko* v. *Starsevich* (1965) 267 Cal.App.2d 84, 86 [46 Cal.Rptr. 596]; *Crittenden* v. *Crittenden* (1963) *supra*; *Kessler* v. *Hay* (1962) *supra*; *Flores* v. *Smith* (1941) 47 Cal. App.2d 253, 259 [117 P.2d 712].) The party seeking relief must show that he acted in good faith and that his neglect was *excusable*. (*Price* v. *Hibbs* (1964) 225 Cal.App.2d 209, 217 [37 Cal.Rptr. 270].) The burden of showing the trial court's abuse of discretion is upon the party seeking to reverse the order denying relief from default. (*Kessler* v. *Hay, supra*; *Schreiber* v. *Duncan* (1952) 111 Cal.App.2d 261, 264 [244 P.2d 465].) Appellate court justices cannot substitute their judgment for that of the trial judge absent a showing of an abuse of discretion. (*Price* v. *Hibbs, supra*, at p. 218.)

Although this motion was made under section 473 of the Code of Civil Procedure and was not an independent action or motion in equity, the necessity of making a prima facie showing that a different result will probably be reached upon a trial on the merits (see, e.g., *McCreadie* v. *Arques* (1967) 248 Cal.App.2d 39, 45 [56 Cal.Rptr. 188]; *Rude* v. *Cogen* (1964) 225 Cal.App.2d 247, 253 [37 Cal.Rptr. 235]; *Turner* v. *Allen* (1961) 189 Cal.App.2d 753, 758-759 [11 Cal.

Rptr. 630]) cannot be entirely ignored in a motion of the kind here in question. (*Greenamyer* v. *Board of Lugo Elementary School Dist.* (1931) 116 Cal.App. 319, 325 [2 P.2d 848]; and see *A & S Air Conditioning* v. *John J. Moore Co.* (1960) 184 Cal.App.2d 617, 621 [7 Cal.Rptr. 592].) "The ultimate purpose of relief under C.C.P. 473 is to give the moving party a fair trial on the merits. Hence he must show that he has a meritorious case or defense, so that a different result may possibly be reached if the judgment or order is vacated." (3 Witkin, Cal. Procedure (1954) p. 2112.)

The facts which give rise to this lawsuit, gathered from Pulaski's pleadings, proof offered at the prove-up,[1] and the declarations attached to Pulaski's opposition to Abbey's motion for relief, are: Abbey had undertaken to furnish and install Glide-A-Wall units on five different school construction jobs, but found itself unable to perform shortly before September 30, 1965. Pulaski offered to take an assignment of Abbey's contracts and to perform the work in Abbey's place for the total consideration of $69,330. Abbey accepted in writing. It was further agreed that payments from third parties for these jobs would be by checks made payable jointly to Abbey and Pulaski, but that Abbey would indorse the checks over to Pulaski. Pulaski performed all the required work. About $52,230 had been collected by Pulaski. However, on February 11, 1966, Abbey refused to indorse a check for $8 230.50 payable jointly to Abbey and Pulaski.

Originally, Abbey claimed that its counsel advised that it should not indorse the check over to Pulaski without a guarantee of the work and materials from Pulaski, as otherwise Abbey would be exposed to liability for defective materials or workmanship on the jobs. Thereupon the requested guarantee and a release from Glide-A-Wall were furnished to Abbey by Pulaski, but, notwithstanding, Abbey's attorney continued to hold on to the check.

From February 1966 until Pulaski's complaint was filed June 14, 1966, both Abbey and its attorney ignored inquiries of Pulaski's president and its attorney, made by both letters and telephone calls. By a letter dated March 5, 1966, with

---

[1] Abbey's counsel attended the hearing, but the trial judge ruled that counsel had no standing until he had the default set aside and proceeded to hear the prove-up leading to the default judgment. Whenever reference is made to Abbey's counsel, it means Abbey's former counsel who died on June 26, 1968, and not the counsel who filed Abbey's closing brief and who appeared at oral argument.

unjustified pompous self-righteousness, Abbey's counsel practically challenged Pulaski's attorney to file suit. Thereafter, no explanation for Abbey's withholding the checks was forthcoming, despite the fact that the third parties were writing to Abbey and Pulaski that they were anxious to pay off monies which they owed. Abbey's counsel threatened these third parties that they would be made parties to a lawsuit if they paid Pulaski directly.

Pulaski's complaint was filed on June 14, 1966, setting forth four counts sounding in: (1) money had and received, (2) declaratory relief, (3) breach of contract, and (4) fraud. Abbey was served by service on the Secretary of State on October 14, 1966, and again by service on its president, Howard H. Hill, on November 1, 1966. Default was entered December 2, 1966. The default was proved up on December 28, 1966, at which time the court found in favor of Pulaski on the declaratory relief and contract counts. On that same date, Abbey's counsel filed his motion for relief from default, which was set for hearing on January 9, 1967, the next law and motion calendar date.

From the documentation attached to the declarations of Pulaski opposing Abbey's motion, the trial court impliedly found that Abbey and its counsel did not act in good faith. One letter written by a secretary for Abbey's counsel on September 6, 1966, stated that Abbey's counsel was in Washington on Federal Bar Association business and that the letter written by Pulaski's counsel on September 1, 1966, would be answered upon his return. However, there was no follow-up. Abbey's counsel also claimed that his partner became ill in early 1966 and that an attorney whom the firm added to its staff also became sick and entered the hospital on December 11, 1966. When his client, Howard H. Hill, delivered the summons and complaint to him promptly after November 1, 1966, he (counsel) gave the documents to his calendar girl to "put it on the calendar, assign it a number and make up a file. However, the summons and complaint were placed in an inactive file."

On November 11, 1966, the firm's bookkeeper resigned and on November 20, 1966, the calendar girl did likewise. Counsel found the summons and complaint during the week preceding December 19, 1966, and telephoned Pulaski's counsel's office, but the calls were not returned.

Abbey's counsel refers to the "bad blood" which existed

between him and Pulaski's counsel. If such were true, the record indicates that he was the one who primarily caused it. If animosity did exist with Pulaski's counsel, there was all the more reason to give the summons and complaint his personal attention and follow-up, instead of turning it over to a girl who was evidently even at that time dissatisfied with her job in the office. Under the circumstances related, it was perfectly proper for the trial court to find, as it did, that the neglect was not excusable (*Schrieber* v. *Duncan* (1952) *supra*, 111 Cal.App.2d 261).

The documentation attached to Pulaski's declarations opposing Abbey's motion for relief from default established, to the satisfaction of the trial court, a written agreement, which as averred by Pulaski, was completely devoid of Abbey's belated claim for a commission of 10 percent. The trial judge at the conclusion of the hearing on January 9, 1967, observed that upon the showing made, it did not appear to him that any different result could be achieved by Abbey, even if the relief were to be granted.[2] The trial court, however, gave Abbey's counsel an additional two weeks within which to file a more detailed factual affidavit which might disclose that Abbey had a meritorious defense. Instead of an

---

[2]Reporter's transcript p. 42, line 15, to p. 43, line 20:

"THE COURT: Well, I have indicated to you what I feel, and I think that Mr. Yokaitis has made a pretty strong case for his Plaintiff in these series of letters making up a rather firm transaction, to which there have been no novation or other documents submitted indicating any substitution or different agreement.

"If you want the time, I will give it to you to present by way of affidavit what you consider to be the factual situation that makes up your defense because, as I say, I am not—I think that the Plaintiff has made a much better case for the facts that there should not be any upsetting of this default judgment because they are entitled to this, and there has been no showing of any kind that they won't be harmed by additional legal expenses, and there has been no showing made that there was a good and sufficient defense of this matter.

"[ABBEY'S COUNSEL]: Well, if your Honor wishes us to file a supplementary affidavit or declaration showing the defense to this action, we will be glad to do it because there is one.

"THE COURT: Well, I think it should be done. That is my opinion. In other words, when a person seeking to set aside what the party has lawfully and has a right to do, and where in this case where I can see there is going to be additional expenses, additional hundreds of dollars of attorney's fees and court days of trial, perhaps, that is the thing that I think you have to overcome; to satisfy the court that there can or should be a defense when on the face it appears to be a pretty firm contract that shows that this Plaintiff is entitled to the funds that he took the default on."

affidavit, Abbey's counsel filed a proposed verified answer[3] and cross-complaint, which in essence alleged that Pulaski agreed to pay Abbey a 10 percent commission and withhold from Glide-A-Wall Company and an H. L. Gogerty the sum of $25,000 owing to Abbey. This was disputed by the declaration of Pulaski's president, H. A. Pulaski, who denied any such agreement, oral or written.

We recognize that the hearing on the motion is not intended to be nor should it be a trial on the merits of the action; however, the party seeking relief from default must show "that a different result may possibly be reached if the judgment or order is vacated" as the Witkin text on procedure points out. The boilerplate affidavit of merit, which at most amounted to only a prima facie showing (3 Witkin, Cal. Procedure (1954) p. 2113), was rebutted by the documentary proof introduced in opposition. The trial court was acting within its discretion in determining that a showing of a meritorious defense had not been made.

The judgment and order appealed from are affirmed.

Stephens, Acting P. J., and Reppy, J., concurred.

---

[3]We are aware that in certain circumstances a verified answer can constitute an adequate affidavit of merits, but this does not automatically follow in every case. Much depends on the contents of the answer.